684

NASSAU–SUFFOLK ICE CREAM, INC.;
Robyn Ice Cream, Inc.; Kings County
Ice Cream, Inc.; North Shore Ice
Cream, Inc.; Central Nassau Ice
Cream, Inc.; Carolyn Ice Cream, Inc.;
Lori Ice Cream, Inc.; John Luciani;
and Bernard Rodin, Plaintiffs,

v.

INTEGRATED RESOURCES, INC.; Integrated Food Systems, Inc.; Steve's
Franchise Company, Inc.; Steve's
Homemade Ice Cream, Inc.; Richard
Smith; Seymour Deutsch; and Andal
Corporation, Defendants.

C.H. BABB CO. INC., Applicant,

v.

KAUFMANN, CAFFEY, GILDIN,
ROSENBLUM & SCHAEFFER,
Respondent.

No. 86 Civ. 1766 (MP).

United States District Court,
S.D. New York.

March 4, 1987.

Goldstein & Manello, Boston, Mass., for C.H. Babb, Co., Inc., applicant by Carl K. King.

Kaufmann, Caffey, Gildin, Rosenblum & Schaeffer, New York City, for respondent by David J. Kaufmann, Byron E. Fox, Bruce S. Schaeffer.

## OPINION

MILTON POLLACK, Senior District Judge.

C.H. Babb Co., Inc. ("Babb"), a former defendant in this case, has moved for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure, against plaintiffs' attorneys Kaufmann, Caffey, Gildin, Rosenblum & Schaeffer ("Kaufmann"). Babb alleges that Kaufmann signed a complaint and two successive amended complaints in violation of the Rule 11 stricture against attorneys submitting frivolous papers before a federal court.

## INTRODUCTION

A brief review of the facts of this case which are relevant to this motion follows. Plaintiffs are franchisees of the "Steve's Ice Cream" chain, having purchased development rights to open up to twenty Steve's stores in Nassau, Suffolk, Queens, and Kings Counties in New York. Defendants are, among others, Integrated Food Systems, Inc. ("Integrated" or "Steve's"), which was the franchisor of Steve's Ice Cream to plaintiffs. Babb, manufacturer of the ice cream machines purchased by plaintiffs for use in their stores, was one of three suppliers of equipment and materials to plaintiffs' stores, who were named as defendants in the original complaint but have since been dismissed from the suit.

In early 1984, plaintiff Bernard Rodin met with Herbert Goldberg of Integrated concerning franchising rights to Steve's stores in the New York area. Negotiations between Goldberg and Rodin apparently continued during the Spring of 1984 and the initial franchising agreement between the parties was executed on August 1, 1984. The ice cream business was not kind to plaintiffs. According to their complaint, they encountered numerous problems with design, layout and advertising for their stores. Their ice cream machines violated local health regulations. Plaintiffs eventually closed their stores, suffering significant losses.

Plaintiffs' original complaint alleged liability of Babb, et. al. under the New York Franchise Act, N.Y.G.B.L. §§ 690–695 (McKinney 1984); the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968 ("RICO"), the antitrust laws, 15 U.S.C. §§ 1–31 (1973) and for fraud and breach of contract under State law. Plaintiffs alleged indeterminate damages, except for a claim of $30 million in punitive damages on the common law fraud claim. This complaint, as well as two later amended complaints, were signed by David J. Kaufmann of the Kaufmann firm and by Theodore Sherbow of the Baltimore firm of Weinberg and Green. Babb has moved, however, only against Kaufmann for sanctions under Rule 11.

## A CLOSER LOOK AT THE COMPLAINT

The original complaint, as well as its two successors, named "Babb Company" (its correct name is C.H. Babb Co., Inc.), as a supplier to the plaintiffs of ice cream manufacturing equipment. In the original 60-page, seven-count complaint, a demand was made for a declaration that Babb and its co-defendants "breached their fiduciary duties to plaintiffs and violated the common law;" (p. 59) requiring the defendants to pay damages sustained by the plaintiffs, including pre-judgment interest; to pay exemplary or punitive damages in the amount of $30,000,000; and to pay an award of costs and disbursements of the action, including reasonable attorneys' fees, experts' fees, accountants' fees and expenses; and requesting such other and further relief as may be just and proper.

The complaint and an accompanying memorandum of law asserted vertical price fixing on the part of all of the defendants, tying arrangements (denying the plaintiffs the opportunity to purchase equipment in the open market at competitive prices); depriving suppliers of the opportunity to compete with Babb as well as the other suppliers named in the complaint; and forcing customers to pay higher prices than would

otherwise have prevailed in a free and open market.

The RICO charges against the defendants, including Babb, charged the effectuation of fraudulent and deceptive correspondence and communications to the plaintiffs, violating the federal statutes barring mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

The complaint and memorandum further asserted that the defendants, including Babb, wilfully violated the New York Franchise Act by unlawfully offering and selling unregistered franchises and making misstatements and omissions violative of that Act. Specifically mentioned in the memorandum is an alleged obligation of franchisees such as plaintiffs to buy two or three ice cream machines from a manufacturer who had equipped those machines with certain "improvements" designed by defendant Steve's. The memorandum asserts that plaintiffs could not locally and economically repair the ice cream machines, but instead were required to ship them to Boston, Massachusetts, presumably a reference to the general location of Babb.

The memorandum further detailed alleged omissions in the franchise offering prospectus and oral misrepresentations allegedly made by the defendants before the execution of the franchise agreements. Finally, the memorandum asserted that the defendants had engaged in conduct constituting common law fraud.

Acting *sua sponte* upon receipt of a copy of the complaint in this suit, this Court dismissed same, with leave to amend, file, and re-serve, on the ground that the complaint failed the test of a simple concise statement of claim under Rule 8 and the requirement of specificity in alleging fraud under Rule 9. This Court described that complaint as "a redundant, repetitious, argumentative series of allegations duplicating matters that should for clarity and simplicity be consolidated and combined, particularly where identical assertions are separately set forth and reiterated for each plaintiff separately." (Memorandum of the Court, March 10, 1986, p. 3).·

A shortened and abbreviated amended complaint was filed on March 24, 1986, and a further amended complaint on July 16, 1986, each again naming Babb as a defendant. On August 15, 1986 the Court received information that Kaufmann would be substituted by new local counsel for the plaintiffs and that plaintiffs planned to dismiss the claims against the equipment suppliers.

The three supplier defendants, including Babb, were thereafter dismissed from the suit by stipulation of the Baltimore counsel, with the reservation that the dismissals would not constitute a waiver of any right of said defendants to seek sanctions pursuant to Rule 11 against Kaufmann. The motion presently before the Court is such an application, being pressed on Babb's behalf on the ground that the claims against Babb contained in the complaints filed by Kaufmann were frivolous and were certified without reasonable inquiry, in violation of Rule 11. Sanctions are sought herein in the amount of $36,831.89.

Affidavits and memoranda have been filed, and a hearing was held by the Court thereon. Finding that there was neither factual nor legal basis for certifying the pleading against the defendant Babb, and that no reasonable inquiry was made in connection with the allegations thereof, and that the same were frivolous and occasioned serious business concern and legal expense to Babb, and that a violation of Rule 11 had occurred, the Court is obliged to impose appropriate sanctions herein.

## FACTUAL BACKGROUND TO THE RULE 11 MOTION

The C.H. Babb Company, Inc. is located in Natick, Massachusetts. It manufactures ice cream making machinery. Babb did not sell anything to plaintiffs. There was no contract of any kind between Babb and any of the plaintiffs. There were no meetings or representations in connection with the franchising referred to in this case between Babb and any representative of the plaintiffs concerning the Babb equipment.

There was no business whatever involving any contract, fraud, or antitrust activity by Babb with any of the plaintiffs, or involving Babb in any interdicted antitrust activity in connection with the equipment that it sold to defendants other than Babb. This equipment was then used by these other defendants in their relationships and transactions with the plaintiffs.

Nonetheless, because of this exceedingly minor indirect interaction, Babb was hailed into Court in a foreign state, charged in a complaint seeking declaratory relief, damages and $30 million in punitive awards. The seriousness of such a coercive claim necessarily required Babb to hire counsel in Massachusetts, as well as local counsel in New York.

Based upon the papers submitted and the argument presented at the hearing before this Court, there appears to be no legitimate reason why Babb was included among the defendants named in this suit. The deposition testimony of the key plaintiffs shows that their only direct contact with Babb was a single telephone call to inquire about repair and spare parts on its ice cream machines. Babb made no sales to plaintiffs and there is no plausible indication of any common ownership or profit-sharing between Babb and Steve's.

The preparation which Kaufmann undertook before signing the original complaint was sorely deficient, as regards their decision to name Babb as a defendant. Kaufmann states that, on December 11, 1985, it received "two large moving cartons of materials, including all pertinent franchise related documents, contracts, memoranda, notes and interviews". Aff. of Kaufmann, ¶ 8b. Respondent notes the extensive time it spent reviewing these documents and drafting a "fact statement" for the use of co-counsel. However Kaufmann has been unable to specify any amount of this time, or to identify any papers other than shipping data (which was not produced) which related specifically to Babb.

To support its decision to name Babb as a defendant in the complaint, respondent points to an internal Memorandum written by Mr. Kaufmann, dated December 17, 1985. In this document, Kaufmann outlines the facts of the case as presented to him by Sherbow. The memo is highly detailed concerning the claims of plaintiffs against Steve's but, again, no mention is made of Babb. Respondent also points to a letter of January 6, 1986 from Mr. Kaufmann to Sherbow in which Mr. Kaufmann opines that "the suppliers" may be potential defendants in the case. The letter, however, contains nothing more than this conclusory statement and does not name Babb.

Kaufmann also notes various places in the deposition testimony of Rodin in which Rodin speculates that there could be some financial connection between Babb and Steve's. According to Rodin's deposition, he was told by Goldberg that he had no choice but to purchase Babb machines from Steve's (Rodin Tr. 208–210) and that there was allegedly a "joint venture" between Babb and Integrated for the development of the Babb ice cream machines used in the Steve's stores. Rodin Tr. 786–87. Rodin, however, also testified that he was aware of no financial connection between Integrated and Babb. Rodin Tr. 481. No one in the Kaufmann firm attempted any independent investigation of any possible financial tie between Babb and Integrated.

## THE LEGAL STANDARDS UNDER RULE 11

Rule 11 of the Federal Rules of Civil Procedure provides in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

■ When it is obvious from the inadequacies of the proposed pleading that plaintiff's counsel engaged in little or no preliminary factual and legal investigation before filing a proposed pleading, Rule 11 directs the court to impose reasonable costs and attorney's fees against the offending party. *Wrenn v. New York City Health and Hospitals Corp.*, 104 F.R.D. 553, 559 (S.D.N.Y. 1985). When a district court finds that an attorney or a party has violated Rule 11, the imposition of sanctions is mandatory. *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985);

■ The test is an objective one, no longer requiring a finding of the attorney's bad faith, as was necessary before the 1983 amendment to Rule 11. *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986). Sanctions are to be imposed when a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper. *Oliveri*, 803 F.2d at 1275; *Eastway*, 762 F.2d at 253–54. However, "in imposing rule 11 sanctions, the court is to avoid hindsight and resolve all doubts in favor of the signer.... Rule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success,'" *Oliveri*, 803 F.2d at 1275, quoting *Eastway*, 762 F.2d at 254.

If the court determines that a pleading fails the *Eastway* standard, then it must decide if the attorney conducted a reasonable inquiry, such that his mistaken belief as to the validity of the complaint was reasonable.

[W]hat constitutes reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading ... whether the pleading ... was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar. *Advisory Committee Note to 1983 Amendments.*

■ When the attorney can get the information necessary to certify the validity of the claim in public fashion and need not

rely on the client, he must do so. To decide if the attorney may rely solely on his client, he should determine if his knowledge is direct or hearsay and check closely the plausibility of the client's account. *See generally,* Note, *The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility,* 61 N.Y.U.L.Rev. 300, 319 (1986). When an attorney must rely on his client, he should question him thoroughly, not accepting the client's version on faith alone. *Fleming Sales Co., v. Bailey,* 611 F.Supp. 507, 519 (N.D.Ill.1985). However, "if all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his obligation." *Coburn Optical Industries v. Cilco, Inc.,* 610 F.Supp. 656, 659 (M.D.N.C.1985).

## THE CLAIMS AGAINST BABB

Kaufmann lodged four claims against Babb in the complaints it certified. Rule 11 "deals with the signing of particular papers in violation of the implicit certification invoked by the signature." *Oliveri,* 803 F.2d at 1274. Following the approach laid out in *Oliveri,* this Court will examine each of the claims made against Babb to determine if the allegations fall below the Rule 11 standard, and if they do, whether Kaufmann failed in its duty to reasonably investigate the appropriate facts and law.

### A. *The Antitrust Claim*

The Amended Complaint makes a claim of an illegal tying arrangement against Babb and Integrated.

Five elements of a tying arrangement must exist in order for there to be an antitrust violation: (1) two distinct products; (2) evidence of coercion; (3) sufficient economic power in the tying product market; (4) anti-competitive effect in the tied market; and (5) involvement of a not insubstantial amount of interstate commerce in the tied market. *Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.,* 754 F.2d 91, 96 (2d Cir.1985).

■ Plaintiffs allege that, upon purchase of the Steve's franchise (the tying product), they were obligated to purchase from Steve's or another supplier (not Babb) allegedly substandard Babb ice cream machines (the tied product). Babb attacks the legal sufficiency of the complaint on numerous grounds. Babb asserts that it had no connection to plaintiffs, exerted no coercion upon them, and had no market power in the tying market. Ultimately, however, the issue, for Rule 11-purposes, turns on whether Kaufmann had reason to believe that Babb and Integrated were joint venturers, as plaintiff Rodin speculates in his deposition, or whether Babb and Integrated were economically unrelated, as Babb now asserts. Clearly, there can be no antitrust violation if the seller of the tying product has no economic connection with the seller of the tied product. *Carl Sandburg Village Condominium Assn. v. First Condominium Development Co.*, 758 F.2d 203, 207–08 (7th Cir.1985).

Plaintiff's claim against a coercive franchisor who presumably shares profits with a designated supplier is not one patently without any chance of success. However, it is not enough to make an antitrust claim and merely *allege* the necessary financial connection between sellers of the tying and tied products. Rule 11 placed upon Kaufmann an affirmative obligation to conduct a reasonable inquiry into the relevant facts of the Babb-Integrated relationship before naming Babb as a defendant. Were it otherwise, pleading would require no more than a list of names and a vivid imagination.

■ Kaufmann failed in its duty to investigate. Its sum basis for attaching Babb's name to a $30 million dollar suit was that its client, Rodin, had a vague sense that Babb was a part of the alleged coercion of Steve's franchisees by Integrated. While respondent may have conducted extensive research into other areas of this case,[1] it apparently did nothing to investigate Babb's role. This defect is especially glaring because no material papers in respondent's possession even mentioned Babb.

Babb asserts, and respondent does not deny, that the *sole* direct contact between plaintiffs and Babb, before the filing of this suit, involved a single phone call to Babb concerning the possible repair of the ice cream machines and the provision of spare parts. Kaufmann examined "two large cartons" of papers concerning this case, but the only mention of the Babb company to which respondent can point is possibly some shipping data mentioning Babb as the original shipper of the ice cream machines. In fact, plaintiffs never actually bought ice cream machines from Babb; all its machines were purchased from either the franchisor or another supplier. This should have put respondent on special notice that it needed to do some digging to establish a factual basis for naming Babb as a defendant.[2]

In sum, without any substantial indication of an economic tie between Babb and Steve's, no reasonably competent attorney could believe that Babb was liable to these plaintiffs for antitrust violations as alleged in the complaints. By signing the complaint containing the deficient claim, after failing to conduct a reasonable investigation to discover facts which might justify such a claim, respondent violated Rule 11.

### B. *The RICO Claim*

■ To make out a RICO claim, a plaintiff must allege that defendant violated the substantive RICO statute, 18 U.S.C.

---

1. Kaufmann specializes in the law of business franchises, purporting to have particular expertise in matters relating to the New York Franchise Act, which figures prominently in plaintiffs' claims against defendants other than Babb.

2. Several paths respondent might have taken, among others, include: a) contacting Babb to see if they might present dispositive proof that they had no economic tie to Integrated; b) conducting an investigation to see if other Steve's franchisees had had more substantial contacts with Babb; or c) attempting to examine whatever financial records were publicly available concerning Babb, to determine any possible connection with Integrated.

§ 1962. The law states that the defendant: 1) through the commission of two or more acts; 2) constituting a pattern of racketeering activity; 3) directly or indirectly invests in, or maintains an interest in, or participates in; 4) an enterprise; 5) affecting interstate commerce. *See Moss v. Morgan Stanley*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

The complaint certified by Kaufmann alleges that the defendants participated in a pattern of racketeering activity by offering to sell Steve's franchises, operating those franchises, and "supplying goods and equipment to the franchise enterprise." (Further Amended Complaint ¶ 61). Plaintiffs allege that the underlying RICO acts were violations of the New York Franchise Act, and violations of federal wire fraud and mail fraud statutes.

■ Mere association with a RICO enterprise is not enough to establish liability. A defendant's participation must be in the conduct of the affairs of a RICO enterprise. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) ("conduct" of the enterprise remains an explicit element of RICO liability.); *United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). A party "conducts" the necessary activities when:

> (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise. *Scotto*, 641 F.2d at 54.

■ It is painfully apparent from the above discussion that Babb's activities, as known to Kaufmann at the time of the filing of the complaint, do not establish RICO liability. Kaufmann failed to allege any position or involvement or control by Babb over the Steve's franchising system. Nor does the complaint provide any clue as to the connection between Babb and any of the alleged predicate offenses. Kaufmann's papers opposing this motion reveal that the only "activity" which they were able to attribute to Babb was participation in a conversation over repair of ice cream machines and the provision of spare parts. Kaufmann knew of no facts upon which a reasonably competent attorney could believe that Babb had committed wire fraud, mail fraud or violations the New York Franchise Act (the underlying violations attributed to Babb in plaintiff's RICO count).

Kaufmann had a duty to investigate, in order to substantiate Babb's role in the RICO enterprise. Respondent failed this duty. As with the antitrust claim, the lack of any apparent connection between the plaintiffs and Babb mandated some factual inquiry by Kaufmann. Yet Kaufmann failed to go beyond mere reliance on the word of its clients. This was insufficient to discharge the duty imposed by Rule 11.

### C. *The Common Law Contract and Fraud Claims*

■ The very minimum required for the establishment of a valid contract claim is a mutual assent to the material terms by the contracting parties. *See, e.g.* 1 *Williston on Contracts*, § 18 (3rd ed. 1957). The complaint certified by Kaufmann does not specify what kind of contract Babb is alleged to have entered with plaintiffs. One can hardly imagine a more frivolous claim than that of breach of a contract between parties who never met, much less negotiated to the point of mutual assent. No reasonably competent attorney could have believed that the facts available to Kaufmann made out a contract claim by plaintiffs against Babb. Kaufmann's examination of all the papers involved in the case revealed no agreement between Babb and plaintiffs. Kaufmann's interviews with plaintiffs revealed no negotiation between Babb and plaintiffs. That investigation instead revealed the frivolousness of a contract claim against Babb; Kaufmann's decision to then assert such a claim before this Court violated Rule 11.

■ The basic elements of fraud are a reasonable reliance upon an intentional misrepresentation, to plaintiff's detriment. *See, e.g., Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.), *cert. denied* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (interpreting New York law). Plaintiffs' complaint describes no representations whatsoever made by Babb to plaintiff. Nor did Kaufmann conduct a reasonable inquiry aimed at unearthing any such representations. As with the contract claim, the lack of contact between Babb and plaintiffs reveals the frivolousness of the fraud claim.

## SANCTIONS

■ Once this Court has determined that Rule 11 has been violated, the imposition of sanctions is mandatory. *Eastway,* 762 F.2d at 254 n. 7. "To deal effectively, fairly and efficiently with sanction claims, district courts have a difficult task, but wide discretion." *Oliveri,* 803 F.2d at 1280. "[T]he underlying purpose of sanctions [is] to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations." *Id.* at 1281; *Matter of Yagman,* 796 F.2d 1165, 1183–84 (9th Cir.1986). In determining the proper amount of sanctions, the court should make a quantifiable accounting, "with some precision and properly itemized." *Id.* at 1184. The court should impose the "reasonable expenses" incurred by the applicant in defending the deficient claim, including a reasonable attorney's fee. *Eastway,* 762 F.2d at 254.

■ A duty to mitigate the costs of defending frivolous actions is incumbent upon a party moving for sanctions under Rule 11. "[R]ule 11 authorizes only 'reasonable' fees, not necessarily actual fees." *United Food & Commercial Workers Union Local No. 115 v. Armour & Co.,* 106 F.R.D. 345, 349 (N.D.Cal.1985). "A party having vigorously resisted a baseless claim may therefore find that the court, in making an award will consider its expenditures to have been excessive." *Yagman,* 796

F.2d at 1185, quoting *Schwarzer, Sanctions under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 203 (1985). Thus, while a client and his attorney may surely select the grand style for their representation, the sanction will be less than the attorney's fee when, in a "comparatively simple matter there was an excess of professional services" *Marine Midland Bank v. Goyak,* 84 Civ. 1204 (EW) (S.D. N.Y. July 12, 1984) [Available on WESTLAW, DCTU database] (LEXIS, Genfed library, Dist file).

Babb seeks $36,831.89 against Kaufmann, representing Babb's total cost incurred in defending this action, from the filing of the original complaint until it learned that plaintiffs were dismissing the action against it. This sum is composed of:

a) 112.5 hours at $205 per hour, spent by Carl King, the senior litigation partner at the large Boston firm which represented Babb. Some of this time was spent on research and preparation of the answer, but the bulk (79.5 hours) was devoted to attending the depositions of plaintiffs.

b) 32.6 hours at $80 per hour, spent by a junior associate and 74.5 hours at $60 per hour spent by summer law clerks. This time was apparently spent on legal research.

c) 56.4 hours at $30 per hour spent by a paralegal, summarizing deposition testimony.

d) $5,007.39 in out-of-pocket disbursements, including travel expenses, photocopying, telephone and automated data-retrieval costs.

■ In view of the obvious deficiencies in the claims against Babb, the total amount sought is excessive. While the Court recognizes that any suit claiming $30 million in damages must be taken seriously, the large amounts of time spent as described above seem unjustified given the fact that Babb's position in the case was simply that it had no connection to the events in question. The extensive research time seems especially unwarranted in light of the fact that no legal maneuvers or

substantive motion practice became necessary.

· This Court has long familiarity with commercial litigation of this type. A "reasonable" response to this litigation would involve some early analysis of the claim by a competent litigator. An answer (consisting of repetitive denials) had to be filed.[3] An attorney also had to attend the depositions of plaintiffs to discover if there was more to the case than first appeared. However the rate asserted by Mr. King, $205 per hour, is clearly excessive, given the tenuous nature of this suit. He states that he is the senior litigator in his firm. This may be, but the reasonable expense of defending a case such as this one does not include such high-priced lawyering at depositions, where objections to the form of questions often constitute the bulk of an attorney's role. Thus, for the allowable time Mr. King spent on this case, the rate which this Court regards as reasonable is $100 per hour. The time of the paralegal in digesting the depositions is also allowed.

Thus, the Court recognizes as "reasonable costs of defense" the time Mr. King spent on the case through the completion of the depositions (95.4 hours), plus the time of the paralegal, plus a proportionate amount of the expenses.[4] The Rule 11 sanctions allowed are $9,540.00 for Mr. King's time, $1,692.00 for the time of the paralegal, and $2,754.06 for out-of-pocket expenses, totalling $13,986.06. This sum shall be paid by the Kaufmann firm to Babb in reimbursement for the expenses occasioned. Payment shall be made in ten days from the date hereof.

## CONCLUSION

The subject of sanctions is a "distasteful" one for any court. *Oliveri*, 803 F.2d at 1271. However Rule 11 places an obligation on every court to deter future misuse of the judicial process, by sanctioning attorneys who forsake *their* obligation under that Rule. Because respondent chose to name a party with virtually no connection to the alleged wrongdoing, and failed to conduct a reasonable investigation in order to legitimately certify that the allegations had substance, this is an appropriate case for sanctions.

---

3. Babb lodged several cross-claims against Steve's in its answer, based on alleged non-payment for 100 ice cream machines.

4. The determination of allowable expenses is reached by dividing the total hours allowed (151.8) by the total hours submitted (276) and multiplying this ratio (.55) by the total expenses submitted.