NASSAU–SUFFOLK ICE CREAM, INC.; Robyn Ice Cream, Inc.; Kings County Ice Cream, Inc.; North Shore Ice Cream, Inc.; Central Nassau Ice Cream, Inc.; Carolyn Ice Cream, Inc.; Lori Ice Cream, Inc.; John Luciani; and Bernard Rodin, Plaintiffs,

v.

INTEGRATED RESOURCES, INC.; Integrated Food Systems, Inc.; Steve's Ice Cream, Inc.; Steve's Franchise Company, Inc.; Steve's Homemade Ice Cream, Inc.; Richard Smith; Seymour Deutsch; and Andal Corporation, Defendants.

No. 86 Civ. 1766 (MP).

United States District Court, S.D. New York.

June 22, 1987.

Milgrim Thomajan & Lee, P.C. by Lawrence I. Weinstein, New York City, Weinberg & Green by Theodore Sherbow, Henry Abrams, Michael Smith, Baltimore, Md., for plaintiffs.

Rosenman & Colin by Gerald A. Rosenberg, Maria Echaveste, New York City, for Integrated defendants.

Stroock & Stroock & Lavan by Bruce H. Schneider, Mary J. Fahey, Anthony I. Pye, New York City, for New Steve's defendants.

## OPINION

MILTON POLLACK, Senior District Judge.

There are two dispositive motions against the complaint pending before the Court. The "Integrated" defendants [1] have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for dismissal for failure to state a claim, under Rule 12(b)(6). The "New Steve's" defendants [2] have moved for dismissal under Rule 12(b)(6).

Federal jurisdiction over the Integrated defendants is based on three claims asserted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 and on principles of pendent jurisdiction. Jurisdiction over the New Steve's defendants is pendent on plaintiffs' claims against the Integrated defendants; no federal claim is asserted against the New Steve's defendants. Finding that the RICO allegations do not state claims upon which relief can be granted, the Court dismisses the RICO claims and declines to assert jurisdiction over the remaining state law claims.

## BACKGROUND

Plaintiffs Bernard Rodin and John Luciani are equal partners in J & B Management Company. J & B is the sole owner of the corporate plaintiffs in this case. In 1983, Rodin was seeking a business opportunity for his son-in-law Renato Cila. In this connection, Rodin contacted Herbert Goldberg, an employee of Integrated Food Systems, Inc., and President of Steve's Ice Cream, Inc. and Steve's Franchise Company, Inc., both of which are wholly owned subsidiaries of Integrated Food.

At that time, according to plaintiffs, Steve's stores specialized in the retail sale of Steve's ice cream, a "premium" brand of ice cream made on store premises. Through its franchising operation, Steve's sold franchises for the retail manufacture and sale of its products.

In January 1984, Rodin met with Goldberg to discuss the possibility of securing a Steve's franchise opportunity for Cila. At this meeting, Goldberg and Rodin discussed the possibility of Rodin acquiring franchises for both single stores and "area franchises," which would give Rodin the exclusive right to open Steve's stores in a given geographical area.

Negotiations between Rodin and Goldberg apparently continued throughout the spring and summer of 1984. Plaintiffs claim that Goldberg represented that Integrated had extensive expertise as a franchisor and would provide a "turnkey" operation to Cila, including assistance in store location, design, advertising and operations. Further, plaintiffs claim that Goldberg provided documents to Rodin which said that Rodin could expect an average profit of between $40,000 and $200,000 per store.

Meanwhile, pursuant to the New York Franchise Sales Act, N.Y.Gen.Bus.Law §§ 680–695 (McKinney 1984), Integrated had submitted to the New York Department of Law a proposed "offering prospectus." New York law prohibits the offer or sale of any franchise prior to such approval. *Id.* at § 683(1). Integrated's prospectus was approved by state authorities on June 28, 1984.

1. Integrated Resources, Inc.; Integrated Food Systems, Inc.; Steve's Franchise Company, Inc.; and Steve's Ice Cream, Inc.

2. Steve's Homemade Ice Cream, Inc.; Richard Smith; Seymour Deutsch; and Andal Corporation.

Rodin signed a lease for a first Steve's store in Great Neck, New York on June 7, 1984. Rodin and Goldberg executed an initial franchising agreement on August 1, 1984. Between August 1984 and May 1985, Rodin completed seven franchising agreements with Integrated, giving him area franchises for Nassau, Suffolk, Kings and Queens counties in New York, plus the right to open four specific stores in those areas. The total consideration paid by plaintiffs for these franchises was at least $250,000.

The franchise agreements which covered each single-store franchise expressly reserved the right of the franchisor to distribute pre-packed ice cream through any distribution method, including via sale in supermarkets. (Franchise Agreement, p. 3, Aff. of Gerald A. Rosenberg, Exhibit N). Further, the franchise agreements state: "Franchisee recognizes and agrees that from time to time hereafter Franchisor may change or modify the system or the products presently identified with the Proprietary Rights, including the adoption and use of ... new products, new equipment or new techniques.... Franchisee shall accept, adopt, use and display any such changes in the system or the products ... as if they were part of this Agreement at the time of execution hereof." *Id.* at p. 24.

Plaintiffs claim that Integrated did not deliver upon its alleged promise of expertise as franchisors, refusing to provide, or providing less than the expected assistance in store construction, store operation, and advertising.

In December 1985, the assets of Steve's Ice Cream and Steve's Franchise Company, Inc. were sold by Integrated to the New Steve's defendants.[3] New Steve's allegedly embarked upon a new business plan as franchisor, emphasizing the sale of pre-packed ice cream through supermarkets, not the sale of ice cream made on the stores' premises. New Steve's offered to sell franchisees pre-packed ice cream for sale by plaintiffs in their stores. Plaintiffs rejected this offer as "directly contrary to the concept that the plaintiffs had purchased,—ice cream made fresh daily on the premises." Plaintiffs continued to sell "homemade" ice cream at their stores. In November 1986, plaintiffs notified attorneys for all defendants that they intended to close the four stores they had opened.

Plaintiffs filed suit, on February 28, 1986 against the Integrated defendants, the New Steve's defendants, and three companies who supplied equipment to Steve's franchisees. This complaint contained allegations against defendants under the New York Franchise Act, RICO, federal antitrust laws and for fraud and breach of contract. This pleading was dismissed by the Court, *sua sponte,* on March 10, 1986 because it was "redundant, repetitious, conclusory [and] argumentative." (Memorandum, p. 3)

On March 24, 1986, plaintiffs filed an Amended Complaint. At a pretrial conference of April 9, 1986, the Court allowed defendants limited discovery, in preparation for motions against the complaint. On July 8, 1986, plaintiffs filed a Further Amended Complaint, adding a new defendant.

Thereafter, plaintiffs dismissed their claims against the three supplier defendants and, having dismissed one of its original law firms, sought leave to further amend the complaint.[4] On March 3, 1987, plaintiffs filed a Second Amended Complaint, which dropped the antitrust claims and limited the RICO allegations to the Integrated defendants.

Count I of this latest complaint charges the Integrated defendants with violations of the New York Franchise Act, arising out of these defendants' alleged misrepresentations in selling the franchises and failure to comply with the Act's registration provi-

---

**3.** Steve's Ice Cream, Inc., one of the Integrated defendants, retained a 20% ownership share in New Steve's.

**4.** One of the supplier defendants successfully sued one of plaintiffs' original counsel for costs under Rule 11 of the Federal Rules of Civil Procedure. *Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.,* 114 F.R.D. 684 (S.D. N.Y.1987).

sions. Count II of the complaint charges the New Steve's defendants with violations of the Franchise Act, for "divorcing" plaintiffs from New Steve's operations, failing to execute the franchise agreements, and failing to comply with the Franchise Act's registration provisions.

Count III charges the Integrated defendants and one of the New Steve's defendants with breach of the franchise agreements. Count IV charges the same defendants with breach of a fiduciary duty allegedly created via plaintiffs' "relationship of the highest trust and reliance" with these defendants. Count V charges the Integrated defendants with common law fraud, based on their alleged misrepresentations in selling plaintiffs Steve's franchises.

Count VI charges the Integrated defendants with a RICO § 1962(c) violation. The RICO enterprise is alleged to be "the Steve's Ice Cream franchise system." Plaintiffs assert that these defendants conducted the enterprise's affairs through a scheme or schemes consisting of a pattern of racketeering activity, specifically "several mail and wire fraud violations" in fraudulently marketing ice cream franchises "doomed for failure."

Count VII charges three of the Integrated defendants with another RICO § 1962(c) violation. The alleged RICO enterprise is the fourth Integrated defendant: Steve's Franchise, Inc. The alleged pattern of racketeering is the same as in Count VI.

Count VIII charges the Integrated defendants with a § 1962(b) RICO violation, alleging that defendants, through a pattern of racketeering activity, acquired or maintained an interest in a RICO enterprise. The RICO enterprise alleged in Count VIII is, as in Count VI, "the Steve's Ice Cream franchise system." The alleged racketeering activity is the same as in Counts VI and VII.

## LEGAL STANDARDS

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court held that a violation of § 1962(c) requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285 (footnote omitted). In a much-cited footnote elaborating on the pattern element of the § 1962(c) violation, the Court observed:

> "the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) [emphasis added by the Supreme Court], not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) [emphasis added by the Supreme Court]." *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

Virtually every circuit has now considered the question of the proper standards for pleading a pattern of racketeering activity. "[C]ourts have struggled to implement *Sedima*'s directive to develop a meaningful concept of pattern based on continuity plus relationship. Development of a uniform concept has been hampered by *Sedima*'s instruction to read limitations into the statutory definition even though the Act is to be broadly construed, by the myriad of diverse fact patterns underlying civil RICO suits, and by the abstract nature of the Court's references to continuity and relationship." *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928 (10th Cir.1987) (citation omitted).

One circuit court has held that proof of a pattern of racketeering activity requires more than one "racketeering activity" to be effective. *Superior Oil Co. v. Fulmer*,

785 F.2d 252, 257 (8th Cir.1986). Where the allegations comprise only one scheme, without proof of other criminal activities, *Superior Oil* held that the complaint should be dismissed. Thus, where defendant allegedly rearranged an oil piping system to his economic advantage, lied to his employers about relevant details, and converted the oil for his own benefit, the court held that all these actions were part of one scheme and therefore insufficient to fulfill the continuity element of the pattern requirement of RICO.

Outside the Eighth Circuit, however, the absolute requirement of multiple schemes or episodes has been widely rejected. *See, e.g., Beck v. Manufacturer's Hanover Trust Co.*, 820 F.2d 46, 51 (2d Cir.1987) (pattern of racketeering activity does not require multiple episodes); *Bank of America v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986) ("Acts that are part of the same scheme or transaction can qualify as distinct predicate acts.").

Several circuits have taken a so-called "middle course" approach on the separate scheme requirement. *See Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). The *Morgan* court rejected a multiple scheme requirement because it focused excessively on continuity, shortchanging the relationship element of the *Sedima* formula. The court noted that a multiple-scheme requirement would have the unacceptable result of excusing defendants who commit a single large ongoing scheme from any RICO liability.

Instead, the *Morgan* court stated:

"In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions.... Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.... The doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends on the facts and circumstances of the particular case, with no one factor being necessarily determinative." *Id.* at 975–76.[5]

Applying this standard to the facts of a previous case with some similarity to the one at bar the court noted:

"The mere fact that the complexity of the transaction generates numerous pieces of paper and hence a greater number of possible fraudulent acts does not make these predicate acts ongoing over a period of time so as to constitute separate transactions that are distinct in time and place. Since these predicate acts were all made in a fairly short period of time (several months), and all clearly relate to the same transaction (the acquisition of a large block of stock), involve a single scheme and a single victim and create a single injury, the acts ... do not satisfy the continuity aspect of the pattern of racketeering activity." *Id.* at 976–77; *See Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322, 323–24 (7th Cir.1986).

*See also Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 31 (1st Cir.1987) ("given the indeterminate nature of the statutory language, and the subtleties inherent in looking for 'continuity plus relationship,' no one characteristics [sic] can be considered controlling in determining whether a pattern exists."); *International Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir.1987)

---

5. The *Morgan* court ruefully noted a comparison between this "less than precise" legal standard and Justice Stewart's famous test for obscenity. *Morgan*, 804 F.2d at 977, *citing Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring) ("I know it when I see it"). In fact, several courts, including this one, have recalled Justice Stewart's oft-cited despair at finding precise standards when they have analyzed the requirements of RICO. *Morgan*, 804 F.2d at 977; *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325, 1336 (N.D.Ill.1986); *Papai v. Cremosnik*, 635 F.Supp. 1402, 1410 (N.D.Ill.1986); *Willamette Sav. & Loan v. Blake & Neal Finance Co.*, 577 F.Supp. 1415, 1430 (D.Ore.1984); *Moss v. Morgan Stanley Inc.*, 553 F.Supp. 1347, 1360 (S.D.N.Y.) (Pollack, J.), *aff'd,* 719 F.2d 5 (2d Cir.1983).

("In our view, no mechanical test can determine the existence of a RICO pattern.").

In this District, a majority of the judges who have addressed the pattern question after *Sedima* have adopted a restrictive interpretation of the pattern requirement for civil RICO actions. *Guilford Mills v. Torf*, No. 85 Civ. 9473 (CSH), slip op. at 8 (S.D.N.Y. June 4, 1987) [Available on WESTLAW, DCT database]; *Revlon, Inc. v. S. Rauch Marketing, Inc.*, 661 F.Supp. 262, 264–265 (S.D.N.Y.1987) (listing 15 cases decided by 13 judges in the Southern District of New York which have adopted a restrictive approach and two others which have not). In *Guilford Mills*, Judge Haight summarized this restrictive approach as follows: "a RICO pattern is not alleged by a plaintiff's mere identification of two related predicate acts; some aspect or threat of continuity of the criminal enterprise is required." *Guilford Mills*, slip op. at 8. This "threat of continuity," however, is not equivalent to a requirement of multiple schemes. *United States v. Ianniello*, 808 F.2d 184, 192 (2d Cir.1986); *Guilford Mills*, slip op. at 9; *Franklin & Joseph, Inc. v. Continental Health Industries, Inc.*, 664 F.Supp. 719, at 722 (S.D.N.Y.1987).

The controlling Second Circuit precedents, while not totally in unison, are consistent with this approach. In *Ianniello*, the court discussed the "continuity plus relationship" language of *Sedima* in the context of criminal RICO. Defendants had been convicted of a broad conspiracy to skim profits from bars and restaurants which they owned in New York City. Liquor licenses were obtained by misrepresentation, taxes were evaded by understating receipts, and those who directed the scheme hid their identity by having others act as "fronts." *Ianniello*, 808 F.2d at 186.

In this context, the court focused on the "enterprise" involved to supply the requisite continuity element. "The link between the acts is supplied by the fact that 'the predicate acts constituting a "pattern of racketeering activity' must all be done in the conduct of the affairs of an 'enterprise.' " *Id.* at 190, *quoting United States v. Weisman*, 624 F.2d 1118, 1122 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980). The court stated, "This circuit requires that, under section 1962(c), the enterprise be a continuing operation and that the acts be related to the common purpose." *Ianniello*, 808 F.2d at 191. The court held that when an enterprise has as its "single purpose" the perpetration of a "fraud continuing indefinitely," the enterprise element is fulfilled. *Id.* The court concluded that "when a person commits at least two acts that have the common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to include are satisfied." *Id.* at 192.

Several courts in this District, in the wake of *Ianniello*, have interpreted that opinion narrowly in dismissing RICO complaints for failure to allege the requisite continuity plus relationship. *Guilford Mills*, slip op. at 9–13; *Terra Resources v. Burgin*, 664 F.Supp. 82, 85–86 (S.D.N.Y.1987); *Revlon*, 661 F.Supp. at 265–266; *Franklin & Joseph*, slip op. at 6–8. *Procter & Gamble Co. v. Big Apple Industrial Buildings, Inc.*, 655 F.Supp. 1179, 1182–83 (S.D.N.Y.1987); *But see In re Gas Reclamation Inc. Securities Litigation*, 659 F.Supp. 493, 514–515 (S.D.N.Y.1987) (" 'when two acts which relate to each other and arise out of the same scheme are alleged,' a RICO plaintiff has successfully pleaded a 'pattern' of racketeering activity."), *quoting Conan Properties v. Mattel, Inc.*, 619 F.Supp. 1167, 1170–71 (S.D.N.Y.1985).

The majority interpretation of the district courts in this District of the *Ianniello* decision has received some support from the most recent Second Circuit case on point. *Beck v. Manufacturer's Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987). In *Beck*, Judge Newman reviewed the pattern and enterprise elements of a civil RICO complaint. Plaintiffs in the case were bond holders suing defendant bank for making

improper interest payments from 1942 to 1981, improperly selling collateral in 1982, and improper assignment of the proceeds of that sale thereafter. The lower court, writing before *Ianniello,* had held that defendant's alleged fraud constituted one scheme and thus did not constitute the requisite pattern of racketeering under *Sedima.*[6] Further, the lower court emphasized that the scheme alleged was not "ongoing or continuous," providing further reason for the dismissal for failure to plead the requisite pattern of racketeering activity. *Beck,* 645 F.Supp. 675, 684 (S.D.N.Y. 1986) (citing several district court cases which dismissed RICO claims because the scheme was not ongoing and continuous).

On appeal, the Second Circuit in *Beck* first dismissed from the complaint the allegations of improper interest payments from 1942 to 1981, finding scienter not sufficiently pleaded. Turning to the issue of a pattern of racketeering activity, the court stated, "It is clear after *Ianniello* that the District Court erred in interpreting 'pattern of racketeering activity' to require multiple episodes." *Beck,* 820 F.Supp. at 51. The Second Circuit nonetheless affirmed the lower court's dismissal of the RICO counts due to a "lack of an adequate allegation of a RICO enterprise." *Id.* at 52.

The circuit court noted that the *Ianniello* opinion "highlight[ed] that our Circuit has given effect to the factor of 'continuity plus relationship' discussed in *Sedima* through our interpretation of the 'enterprise' element of RICO." *Id.* at 51. Significantly, the court, in effect, unified the analysis of the pattern and enterprise elements, for the purposes of the *Sedima* analysis: "whether one looks for the requisite continuity and relatedness by examining the pattern or the enterprise is really a matter of form, not substance." *Id.* at 51. The court concluded that, with the allegations of the long-term improper interest payments dismissed from the case, "the

enterprise alleged by plaintiffs had but one straightforward, short-lived goal ... At the conclusion of the sale, the alleged enterprise ceased functioning ... Such an association is not sufficiently continuing to constitute an enterprise under 18 U.S.C. §§ 1961(4), 1962(c)." *Id.* at 51.

■ This analysis leads to the following guidelines. First, the *Sedima* language of "continuity plus relationship" is the standard to be applied in judging the sufficiency of a civil RICO complaint, whether under the pattern requirement, as in most circuits, or under the enterprise element, here in the Second Circuit. Second, in this Circuit, as in most others, there is no strict requirement that a plaintiff plead multiple schemes in order to defeat a motion to dismiss. Third, in applying *Sedima*'s continuity requirement, at the very least, *Beck* mandates that an alleged scheme whose goal is "straightforward [and] short-lived," and which has an obvious termination date, should be dismissed.

■ Beyond these indications, and here we tread somewhat more gingerly, the continuity judgment may be informed by a confluence of factors considered on a case by case basis. Thus, the court may consider the number and variety of the predicate acts, the length of time over which they were alleged to be committed, the number of victims, whether multiple schemes are alleged, and the nature and the diversity of the injuries alleged. *See Morgan,* 804 F.2d at 975–77, cited by *Ianniello* at 808 F.2d 192–93.

### THE INSTANT MOTION

Taking the allegations of the complaint at face value, as we must do on a motion to dismiss, the Court finds that the allegations against the Integrated defendants amount to the following.

In early 1984, Goldberg, president of Steve's Ice Cream, met with Rodin and

---

6. The district judge in *Beck* heard reargument and issued a second opinion, virtually contemporaneously with *Ianniello.* Recognizing that the Seventh Circuit in *Morgan,* 804 F.2d at 975, had overruled the multiple scheme requirement applied in several district court cases in that circuit, the judge nonetheless reaffirmed his original opinion, adhering to a multiple scheme requirement. *Beck,* 650 F.Supp. 48, 50 (S.D.N.Y.1986).

induced him to purchase franchises to open Steve's Ice Cream stores. In the course of these negotiations, Goldberg allegedly made several knowing misrepresentations. Goldberg allegedly falsely stated: 1) the costs plaintiffs would incur in opening stores and the profits they would make; 2) that Integrated had expertise in franchising; 3) that Integrated would provide plaintiffs with a "turnkey" operation by providing exact designs for layout and equipment; 4) that Steve's ice cream could be sold for home consumption;[7] 5) that Integrated would thoroughly train plaintiffs' personnel; and 6) that Integrated would conduct extensive national and regional advertising campaigns on behalf of Steve's.

Relying upon these representations, plaintiffs, on August 1, 1984, purchased the area franchise rights for Nassau and Suffolk counties. This gave them the exclusive right to open Steve's Ice Cream stores in those counties. However, according to the franchise agreement, this privilege was conditional upon plaintiffs' opening at least two stores per year in those counties. (Area Franchise Agreement, p. 3–4 Aff. of Gerald A. Rosenberg, Ex. M).

Plaintiffs allege that Goldberg renewed his prior representation concerning advertising, upon which plaintiffs, on September 12, 1984, purchased development rights for Kings and Queens counties. Ultimately, plaintiffs and the Integrated defendants executed several single-store franchise agreements, the last of which was signed on May 22, 1985. These later franchises were contemplated by the earlier franchise agreements, and, indeed, the opening of these stores was a prerequisite to protecting plaintiffs' investment in the area franchises.

Plaintiffs state that these defendants' activities "consisted of several mail and wire fraud violations as a part of an on-going scheme, or several schemes, to knowingly, willfully and fraudulently market ice cream franchises, doomed for failure, in return for up-front franchise fees and other pay-

ments." (Second Amended Complaint ¶ 58). Plaintiffs allege that the scheme was in existence from January 1984 through December 1985 and have noted that the franchise agreements cover a 10-year period. However, plaintiffs have pointed to no material acts of fraud which defendants committed before January 1984 or after September 1984.

The Court first notes that there is essentially one defendant and one victim in this case. Each of the Integrated defendants, other than Integrated itself, are wholly-owned subsidiaries of Integrated Resources, Inc. Similarly, each corporate plaintiff is wholly owned by J & B Management Co., which is owned by Luciani and Rodin, 50% each. Thus, there was essentially one decision-making entity on each side of this allegedly fraudulent franchising arrangement.

Plaintiffs have basically alleged that defendants misrepresented the franchise investment during negotiations from January through August 1984, when plaintiffs purchased their first set of development rights. It is apparent from the complaint that plaintiffs relied on these same representations in purchasing other development rights five weeks later. Plaintiffs' later single-store franchise purchases were part of an ongoing obligation under the earlier area franchise agreements. Alternatively, plaintiffs' claims may be viewed as a breach of contract in that defendants allegedly did not perform their obligations as they had promised.

In either event, there is no open-ended, continuous scheme alleged by plaintiffs. Essentially, one party, J & B Management, purchased several area franchises over a five-week period in August and September of 1984, from another party, Integrated. Once Integrated made those sales, and plaintiffs paid their fees, the "scheme" had reached fruition. In the words of *Beck*, the goal of this alleged scheme was "short-lived [and] straightforward." *Beck*, 820 F.Supp. at 51. The continuity element re-

---

7. Plaintiffs claim that the ice cream in fact became unpalatable after resting for a period of time in customers' freezers.

quired under *Sedima* and *Beck* is not fulfilled by fraud alleged as part of a single set of negotiations between two entities which culminated in the purchase of two area franchises.

Furthermore, we note that despite the lack of detail alleged in plaintiffs' allegations of mail and wire fraud, it appears that the variety of the alleged fraudulent acts is not so great as to be thought of as constituting anything but a straightforward negotiation, by telephone and letter. "Most substantial business transactions involve two or more uses of the mail [and telephone] during negotiations. To hold that two such [acts of alleged fraud] are sufficient to constitute a 'pattern of racketeering activity' would be to sweep into federal courts, under RICO, the great majority of actions for fraud in commercial transactions." *Exeter Towers Associates v. Bowditch,* 604 F.Supp. 1547, 1554 (D.Mass.1985).

Nor is it dispositive that plaintiffs purchased their franchise rights in several stages over a period of months. *Beck* says that RICO schemes which are "short-lived" may be dismissed. *Beck,* 820 F.Supp. at 51. *See Roeder,* 814 F.2d at 31 ("acts can be so closely interrelated in function and connected in time that the 'threat of [a] continuing activity' factor is absent"); *Marks v. Pannell Kerr Forster,* 811 F.2d 1108, 1110–12 (7th Cir.1987) (RICO count dismissed where acts covered "several months"); *Morgan,* 804 F.2d at 976–77; (allegations of numerous paper transactions spread over a short period of time do not guarantee continuity).

## CONCLUSION

The RICO claims against the Integrated defendants are therefore dismissed as failing to state a claim upon which relief can be granted. The balance of the allegations against the Integrated defendants, which consists of state statutory and common-law claims, is dismissed without prejudice. The state-created claims against the New Steve's defendants are likewise dismissed without prejudice, thus terminating the entire action in this Court.

So Ordered.