**Ernesto FORBES, Plaintiff,**

v.

**MERRILL LYNCH, FENNER & SMITH, INC., Yolanda D'Apuzzo and Anthony DiBiase, Defendants.**

**No. 96 Civ. 7461(CBM).**

United States District Court,
S.D. New York.

April 6, 1998.

## MEMORANDUM OPINION
## Re: SANCTIONS

MOTLEY, District Judge.

### BACKGROUND

Plaintiff, a former employee of defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), alleged that defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and that Merrill Lynch committed the tort of intentional infliction of emotional distress [1]. The court held a bench trial on October 1, 6, and 7, 1997. The court set forth its findings of fact on the record and dismissed Forbes' claims. Because the court found that the ADA claim was entirely without substance and that "there ha[d] been a total failure of proof on the part of plaintiff as to his claimed

---

1. Plaintiff also brought a complaint under the New York State Executive law which was dismissed on the ground that a prior proceeding before the New York City Human Rights Commission collaterally estopped him from pursuing this claim. *See Forbes v. Merrill Lynch et al.*, 957 F.Supp. 450 (S.D.N.Y.1997) (holding that the commission's no probable cause determination was decisive).

disability[2] or claimed perceived disability and defendants' knowledge of same," [3] it decided to award counsel fees based on one or more of the following provisions: 42 U.S.C. § 12205; 28 U.S.C. § 1927; Fed.R.Civ.P. 11(c)(1)(B); and the inherent power of the district court to award attorney's fees. On January 23, 1998, the court held a hearing to determine the amount of attorney's fees to be granted and now sanctions plaintiff's counsel, Mr. Lee Nuwestra, in the amount of $25,000.00 for violations of Fed.R.Civ.P. 11. The court also holds that Mr. Nuwestra did not demonstrate the bad faith necessary to trigger sanctions under 28 U.S.C. § 1927.

## ANALYSIS

### I. The Award of Attorney's Fees

A court can award attorney's fees to a prevailing party on numerous alternative grounds. The Americans with Disabilities Act itself states that the court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Even absent enabling language from the organic statute which creates a cause of action, the court may sanction "[a]ny attorney .. who so multiplies the proceedings in any cause unreasonably and vexatiously" in the form requiring the attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Moreover, "a district court has 'inherent power' to award attorney's fees against the offending party and his attorney when it determines a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Agee v. Paramount Communications, Inc.,* 114 F.3d 395, 398 (2d Cir.1997). "To impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Id.; see also Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986) (an

award pursuant to § 1927 must be supported by bad faith); *Browning Debenture Holders' Comm. v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977) (bad faith actions are those entirely without color, asserted for improper reasons).

Finally, the Federal Rules of Civil Procedure provide that a court may impose sanctions on its own initiative. *See* Fed.R.Civ.P. 11(c)(1)(B) "If a court wishes to exercise its discretion to impose sanctions sua sponte, it must 'enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney ... to show cause why it has not violated subdivision (b) with respect thereto.'" *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328–29 (2d Cir.1995) (quoting Fed.R.Civ.P. 11(c)(1)(B)). The court can direct payment of reasonable attorneys' fees.

"In considering sanctions regarding a factual claim, the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated ... an attorney is entitled to rely on the *objectively reasonable* representations of the client." *Id.* (citation omitted) (emphasis added). However, an attorney cannot totally rely on the uncorroborated word of her client and hearsay witnesses for all of the key contentions of the case. *See, e., Selbst v. Touche Ross & Co.,* 116 F.R.D. 665 (S.D.N.Y.1987) (case held to be frivolous where former employee's supervisor was not aware of plaintiff's suspected pregnancy before he decided to fire her); *Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.,* 114 F.R.D. 684, 689 (S.D.N.Y.1987) ("When an attorney must rely on his client, he should question him thoroughly, not accepting his version on faith alone.... if all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his [Rule 11] obligation.").

---

**2.** Plaintiff alleged in his complaint that his disability was being Human Immunodeficiency Virus (HIV) positive. See ¶ 15, 44. In plaintiff's pre-trial memorandum, he states that he had developed the Acquired Immune Deficiency Syndrome (AIDS) virus by the time of his termination.

**3.** Transcript (hereinafter "Tr.") of proceedings at 480.

## II. Nuwestra's Conduct which Violates Rule 11

■ Under the Americans with Disabilities Act, a plaintiff must establish that (1) he is an individual with a disability within the meaning of the act; (2) he is otherwise qualified to perform the job; and (3) he was discriminated against or discharged because of the disability. *See Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996). A disability within the meaning of the act is a "physical or mental impairment that substantially limits one or more of the major life activities"; one can also be disabled if she has a "record of such impairment" or is "regarded as having such an impairment." 42 U.S.C. §§ 12101–12213. To be otherwise qualified to perform the job, the employee must be able to perform the essential functions of the job either "with or without reasonable accommodation." *Id.* at § 12111(8).

■ Forbes contended in his complaint— and reiterated in his pre-trial order, which supersedes his complaint—that he was informed in 1992 that he had contracted HIV; whereas at trial he asserted he had been told at that time that he had AIDS. See Compl. ¶ 15; Pre–Trial Memorandum, 3; Tr., 86. Similarly, while his complaint averred that he told one of his supervisors that he had HIV, at trial Forbes stated that in fact he had said it was AIDS. See Tr., 151–152. At some points Mr. Nuwestra seemed to be arguing that HIV and AIDS were equivalent.[4] Mr. Nuwestra should not have glibly breezed over the differences between the two. As it turned out, the differences were not relevant for purposes of this case because the question of defendants' knowledge of and consequent alleged discrimination due to the disability became paramount.[5] How-

ever, a lawyer handling ADA cases must at the very least ascertain exactly what disability his or her client has.

Moreover, a lawyer must be able to demonstrate either that the client is disabled or was regarded as being disabled. A key contention in this case was that Mr. Forbes tested positive for HIV in either August or October of 1992 (the testimony was inconsistent as to the month, but consistent as to the year 1992). Not one document was ever produced to verify that this occurred and, in fact, plaintiff's medical records demonstrate that as of October 15, 1992 plaintiff was being treated for a leg problem unrelated to HIV. However, material to the factual dispute here, plaintiff never raised the question of HIV with his doctor until June, 1993. Mr. Nuwestra attempted to explain away his client's failure to demonstrate his client's disability by arguing that Forbes was tested at an anonymous service which informed Forbes of his test result over the telephone. Either due to his own confusion or to deliberate obfuscation, Mr. Nuwestra appeared to be conflating anonymous *testing,* a practice necessary to preserve a patient's privacy, with the existence of an entirely anonymous testing *service.*

Finally, Mr. Nuwestra did not reasonably investigate whether, when, and under what circumstances Mr. Forbes informed his employers about his HIV or AIDS status, a crucial omission given that the employer's notice was the crux of the case. For example, the complaint alleged that there was a gap of time between when the Forbes learned that he had contracted HIV/AIDS (again, the testimony is inconsistent as to the nature of the disability) and when he told his immediate supervisor. At trial, plaintiff tes-

---

4. *See* Tr., 138:

> Mr. Nuwestra: The theory of my case, your Honor, is that the plaintiff had disclosed to one or more of the agents of the employer that was HIV slash AIDS person [sic.] with a disability. The Court: Let's not fly over that like that. It is one thing to be HIV positive, but it is something else to have AIDS, isn't it?
> Mr. Nuwestra: That is not my understanding. Looked at in the most charitable light, it is possible to read this and later statements by Mr. Nuwestra as illustrating the point that there is

some inconsistent parlance in how AIDS is defined. For example, some define AIDS based on the count of T-cells while others look to the presence of certain opportunistic infections. It is also true that the medical community and society at large did not immediately delineate HIV and AIDS. However, it is clearly problematic for a lawyer bringing ADA cases to stand in a courtroom in 1997 and suggest that HIV and AIDS are in fact the same thing.

5. *See* Tr., 274–278.

tified that he told his supervisor immediately upon learning of the test result over the telephone. *See* Tr., 87. In addition, plaintiff's complaint and pre-trial memorandum said nothing about whether plaintiff allegedly told the defendant's Director of Human Resources, Nick DiGirolamo, or the department head, Anthony DiBiase, the individual who terminated plaintiff, of his condition. In plaintiff's deposition, he testified that he did *not inform either* of them about his disability. However, at trial, plaintiff testified that he told both of them.

None of the above is to suggest that a complaint need be anything other than a short, plain statement of the facts giving rise to a claim or that attorneys need make anything more than "an inquiry reasonable under the circumstances" into whether "factual contentions have evidentiary support." Fed. R.Civ.P. 11(b) & (b)(3). In this case, an extremely relevant circumstance was the NYCHRC's determination of no probable cause. Another was plaintiff's inability to provide either evidence to support key aspects of his claim or any direct evidence of alleged discrimination. These circumstances should have caused plaintiff's counsel to proceed with extra caution, or, better yet, not to proceed at all. Instead, plaintiff's counsel moved squarely forward, apparently without ever having investigated key issues in the case: the nature of plaintiff's disability, whether plaintiff's employers knew about it, and when any of the crucial events occurred. Rule 11 sanctions are thus appropriate.

■ "The court has the discretion to fashion an appropriate sanction for a Rule 11 violation. The critical consideration in exercising this discretion is that the policy underlying Rule 11 is to sanction rather than to reimburse. However, the typical sanction imposed is the payment of the other party's reasonable attorneys' fees which were in-

curred as a result of the violation [and it] should not exceed … the minimum that will … deter the proscribed conduct." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 667 (S.D.N.Y.1997) (citing *Eastway Construction Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)). The court finds that a sanction of $25,000.00 will be sufficient to deter the conduct. In order to underscore the point that the importance of the civil fights statutes requires corresponding seriousness and diligence on the part of the lawyers who bring cases under them, the court is imposing the sanction on plaintiff's counsel alone, rather than the lawyer and the client.[6]

### III. Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Powers

■ Mr. Nuwestra has not demonstrated the particularized showing of bad faith necessary to support an award of sanctions under 28 U.S.C. § 1927 and the Court's Inherent Powers. *See United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO*, 948 F.2d 1338, 1345 (2d Cir.1991) (requiring a particularized showing of bad faith). The plaintiff was referred to Nuwestra's office in the summer of 1996 by the Managing Attorney of the Gay Men's Health Crisis ("GMHC"), who submitted an affidavit attesting to this. Nuwestra maintains that prior to filing the ADA action, he reviewed the file and contacted and interviewed at least three non-party witnesses to ascertain whether they had knowledge of plaintiff's HIV status in 1992. Nuwestra also spoke with Forbes' priest, the Reverend Crafton, before accepting the case. Although Mr. Nuwestra cannot escape Rule 11 sanction because, under the circumstances discussed above, a reasonable attorney would have done more investigation at the initial stage and later on in the course of the litiga-

---

**6.** The court also declines to sanction Marjorie Kaye, the other attorney who signed the complaint. Mr. Nuwestra is not being sanctioned merely or even primarily for the complaint he filed but rather for taking the case all the way to trial; he is being sanctioned for his *ongoing* failure to make reasonable inquiries in the papers he filed before the court, from the complaint onward. His pre-trial memorandum, submitted

after the close of discovery, reiterated many of the problematic assertions in the case and contained some important omissions. This memorandum was not signed by Kaye. Kaye's post-complaint involvement was discreet; she successfully argued a statute of limitations and failure-to-state-a-claim challenge to the case and responded to discovery requests.

tion, there has been an insufficient showing of complete bad faith in bringing this action.

## CONCLUSION

For the reasons discussed above, the court hereby concludes that a Rule 11(c)(1)(B) sanction is to be imposed on Mr. Lee Nuwestra in the amount of $25,000.00 payable to defendants in payment of their counsel fees.