**James F. CURLEY, Plaintiff,**

v.

**ST. JOHN'S UNIVERSITY, Defendant.**

No. 97 Civ. 4450(CBM).

United States District Court,
S.D. New York.

June 3, 1998.

---

Lee W. Nuwesra, New York City, for Plaintiff.

Ruth D. Raisfield, Orrick, Herrington & Sutcliffe, L.L.P., New York City, for Defendant.

## MEMORANDUM OPINION ON RECUSAL MOTION

MOTLEY, District Judge.

Plaintiff James F. Curley ("Curley") sued defendant St. John's University ("St.John's") for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. Curley is represented by Mr. Lee Nuwesra ("Nuwesra"). Curley filed the instant motion, pursuant to 28 U.S.C. § 455, seeking to have the undersigned judge recuse herself due to alleged personal bias against Nuwesra. Because the court finds that a reasonable person who knew all the relevant facts surrounding a prior proceeding in which Nuwesra was counsel would not conclude that the judge's impartiality in *Curley v. St. John's University* could reasonably be questioned, the court denies the § 455 motion.

### BACKGROUND

Between the time that *Curley v. St. John's University* was filed and the present, the court held a bench trial in another case, *Forbes v. Merrill Lynch et al.*, 179 F.R.D. 107 (S.D.N.Y.1998), which was brought pursuant to the Americans With Disabilities Act. The trial occurred on Wednesday, October, 1, Monday, October 6, and Tuesday, October 7, 1997. Before the opening statements on October 1, 1997, the following conversation occurred on the record:

MR. NUWESRA: Your Honor, may I ask one question of you?

THE COURT: Yes.

MR. NUWESRA: One is that I am of the Jewish faith and I need to know what's happening with regard to the Jewish holidays. Secondly, I need to know from your Honor whether this is going to be a bifurcated trial with regard to liability and damages or just—

THE COURT: Is that an open issue? We had not decided that?

MR. NUWESRA: We have not, Judge....*[Further mention of bifurcation issue]*

THE COURT: With respect to your first question what about the Jewish holiday, when does that begin and when does it end?

MR. NUWESRA: It begins, your Honor, sundown today and there should be a lot of traffic, and tomorrow is the main day of the holiday. Some people—

THE COURT: Then we'll go as far as we can today and we are going to recess until Monday but just a moment, I'll have to check the calendar. (Pause.) Yes, we will continue Monday at 10 o'clock.

MR. NUWESRA: Thank you, your Honor. With respect to the second issue, your Honor.

THE COURT: With respect to the bifurcation issue....

Later that day, the subject of Rosh Hashanah was raised again:

MR. NUWESRA: Your Honor, it is now 12 o'clock. It would make my family extremely happy if I can hook up with them and meet—

THE COURT: If you can what?

MR. NUWESRA: If I can meet with them by about 2 o'clock, because of the holiday season, because of the holiday function. We're planning on getting together for 2 o'clock and then traveling for some distance. I also would like to be able to go back to my office and also relieve the rest of the staff at the work. Can we continue on Monday?

THE COURT: I thought we were going to at least spend the day on this case. You didn't mention that this morning. I thought you said the holiday began this evening?

MR. NUWESRA: Well, the religious holiday starts at sundown, but I also mentioned that there would be some travel time and some traffic.

THE COURT: No, I think we should go ahead and try to finish this case. It's only 12 o'clock.

MR. NUWESRA: I understand. How far—

THE COURT: We didn't start until 10, 10:30.

MR. NUWESRA: How far do you think we'll be going, your Honor?

THE COURT: I don't know. Just put on your next witness. We have a lot of other cases, you know. It's not the only case I have. So put on your next witness, please.

MR. NUWESRA: My next witness is the plaintiff himself.

Following the bench trial on October 7, 1997, the court set forth its findings of fact on the record and dismissed plaintiff Forbes' claims. Because the court found that the ADA claim was entirely without substance and that "there ha[d] been a total failure of proof on the part of plaintiff as to his claimed disability or claimed perceived disability and defendants' knowledge of same," the court suggested that if defense counsel intended to ask for counsel fees, they should file the required affidavit, which defendants did, itemizing services for which they had billed their client Merrill Lynch $234,045.66. Plaintiff Forbes filed his memorandum in opposition.

On January 23, 1998, the court held a hearing to determine the amount of attorney's fees to be granted. It then wrote an opinion sanctioning Nuwesra in the amount of $25,000.00 for violations of Fed.R.Civ.P. 11.[1] An order was simultaneously filed on April 6, 1998.

The court also held that Nuwesra did not demonstrate the total bad faith necessary to trigger sanctions under 28 U.S.C. § 1927. *See Forbes v. Merrill Lynch et al.*, 1998 WL 164920 (S.D.N.Y.).

The decision was reported on the front page of the New York Law Journal on April 8, 1998 and was covered in one or more of the local New York City newspapers.

Nuwesra and Curley had a meeting on or about April 22 at which Nuwesra informed

---

**1.** Fed.R.Civ.P. 11 provides, in relevant part, that "by presenting to the court ... a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowl- edge, information, and belief, formed after an inquiry reasonable under the circumstances ... the allegations and other factual contentions have evidentiary support."

Curley of the *Forbes* decision, about which Curley had already learned on the Internet. At the conclusion of the meeting, Nuwesra encouraged Curley to seek substitute counsel because of their concerns about this court's partiality. Curley felt it was financially impossible at that point in the case to substitute counsel. *See* Aff. of James F. Curley, ¶¶ 3–7. In the instant case, discovery has been completed. A summary judgment hearing was scheduled for June 4, 1998. The court granted a stay of all proceedings on May 19, 1998 pending its decision on the instant motion.

On May 5, 1998, Nuwesra filed a Notice of Appeal from the *Forbes* order imposing the Rule 11 sanction.

## CONCLUSIONS OF LAW

### A. Standards for Disqualification of a Judge

■ Plaintiff has brought the present motion pursuant to 28 U.S.C. § 455. The statute provides, in relevant part, that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonable be questioned. He shall also disqualify himself in the following circumstances . . . . where he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1); *see In re International Business Machines Corp.*, 45 F.3d 641, 643 (2d Cir.1995). Although the statute speaks in terms of prejudice concerning a party, a motion concerning bias against a party's *counsel* is not precluded due to the broad language in § 455(a) ("any proceeding") and because bias or prejudice could "adversely affect the interest of the litigant." 54 A.L.R.5th 575 (1997). "Bias against a lawyer, *even if found to exist,* without more is not bias against his client." *Person v. General Motors Corp.*, 730 F.Supp. 516, 520 (W.D.N.Y.1990) (citation omitted) (emphasis added); *see also Gil Enterprises, Inc. v. Delvy*, 79 F.3d 241 (2d Cir.1996) (trial judge's frustration, in contract action, with the attorney for one of the parties did not constitute bias).

■ The analysis under § 455 looks to "extrajudicial conduct as the basis for making such a determination." *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2d Cir.1987). "Events occurring in the course of judicial proceeding generally do not constitute a basis for recusal unless they indicate that the judge has a deep-seated favoritism or antagonism that would make fair judgment impossible." *United States v. Conte*, 99 F.3d 60, 65 (2d Cir.1996). "Judicial rulings alone almost never constitute valid basis for a bias or partiality motion." *In re International Business Machines Corp.*, 45 F.3d at 644 (*quoting Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

■ "The trial judge is vested with discretion to determine whether to disqualify herself [and] to determine the legal sufficiency of the affidavit supporting the motion." *Holmes v. NBC/GE et al.*, 925 F.Supp. 198, 201 (S.D.N.Y.1996) (citation omitted); *see also United States v. Rivera*, 802 F.2d 593, 601 (2d Cir.1986) ("Our applications of section 455 allow that, faced with such a motion, a district judge is not automatically disqualified; he may first decide whether a hearing is necessary."). The test applied for recusal "is an objective one which assumes that a reasonable person knows and understands all the relevant facts." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988). "The question is would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned." *Aiello v. United States of America*, 1997 WL 716913 (S.D.N.Y.) (*citing U.S. v. Lovaglia*, 954 F.2d 811, 814 (2d Cir. 1992)). In applying the objective test, the judge must be mindful that he or she is "as much obliged not to recuse himself [or herself] when it is not called for as he [or she] is obliged to when it is." *In re Drexel Burnham Lambert Group, Inc.*, 861 F.2d at 1312.

### B. Alleged Biases in the Present Case

Plaintiff's motion points to the following as indicative of the court's appearance of partiality: the court's denial of Nuwesra's request to leave before two o'clock p.m. on the first day of trial for Rosh Hashanah; the court's inviting defendants to seek counsel fees; and the court's "singl[ing] out attorney

Nuwesra for sanctions under F.R.C.P. 11, even though another attorney had also signed the Complaint and remained as attorney of record throughout the trial" and "even though the Court denied Defendants' counsel's fees pursuant to 28 U.S.C. Section 1927". Mot. at 5.

### Rosh Hashanah

■ As the transcript quoted above indicates, the court, upon Nuwesra's request, adjourned trial for the two days of Rosh Hashanah, Thursday, October 2 and Friday, October 3. Nuwesra did not explicitly ask to truncate the first day of trial, either before October 1st or during the morning conversation about the timing of the trial. When Nuwesra did ask, at 12 o'clock, to leave at two o'clock, the court noted that it was the first time it had heard that particular request and had understood that the holiday was not to begin until the evening. This court holds that neither the morning conversation about the holiday nor the 12 o'clock conversation, at which the court denied Nuwesra's request to leave at two o'clock, are facts which would cause a reasonable person to question the judge's impartiality in the instant case.

### The Rule 11 Sanction

Plaintiff has suggested that the court's adverse ruling against his counsel in an unrelated, prior proceeding constitutes bias against him in the present matter. The fact that the Rule 11 sanction was imposed in a *prior proceeding* does not itself defeat Curley's claim. *See Lewis v. Tuscan Dairy Farms, Inc.,* 25 F.3d 1138, 1141 (2d Cir., 1994) ("There may be instances in which a judge's behavior during prior judicial proceedings can demonstrate sufficient friction between the judge and the complaining party to support a finding of bias.") (*quoting United States v. Daley,* 564 F.2d 645, 651 (2d Cir. 1977)). However, without more, the imposition of sanctions does not warrant a recusal. *See Lewis,* 25 F.3d at 1141 (fact that district judge had found union president in contempt in prior proceeding due to lack of credible testimony did not require recusal when same union was sued by union member).

Plaintiff's motion can be read to mean that he is alleging facts in addition to the Rule 11 sanction itself to create a claim of partiality. These facts are: the court's initiative in seeking the sanction, the court's decision to only sanction Nuwesra rather sanctioning Nuwesra, Forbes, and the other individual who signed the complaint, and the court's insistence on sanctioning under Rule 11 even without a finding of total bad faith as required by Title 28 U.S.C. § 1927. *See Agee v. Paramount Communications Inc.,* 114 F.3d 395, 398 (2d.Cir.1997) ("To impose sanctions under [28 U.S.C. § 1927], the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."); *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986) (an award pursuant to § 1927 must be supported by bad faith); *Browning Debenture Holders' Comm. v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir. 1977) (bad faith actions are those *entirely* without color, asserted for improper reasons) (emphasis added).

However, none of these facts is independent of the sanction itself: Rule 11 allows a court to impose sanctions *sua sponte.* It gives the court judicial discretion in choosing whom to sanction. *See* Fed.R.Civ.P. 11(c)(1)(B) ("On its *own initiative,* the court may enter an order describing the specific conduct [that violates Rule 11]") and 11(c) ("the court may … impose an appropriate sanction upon the attorneys, law firms, *or* parties that have *violated [Rule 11] or are responsible for the violation.*") (emphasis added). In other words, none of these facts are, or even approach being, extrajudicial. With respect to 28 U.S.C. § 1927, as the court held in the *Forbes* case:

> Mr. Nuwesra has not demonstrated the particularized showing of bad faith necessary to support an award of sanctions under 28 U.S.C. § 1927 and the Court's Inherent Powers. *See United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* AFL—CIO, 948 F.2d 1338, 1345 (2d.Cir.1991) (requiring a particularized showing of bad faith). The plaintiff was referred to Nuwesra's office in the summer of 1996 by the Managing Attorney of the Gay Men's Health Crisis ("GMHC"), who

submitted an affidavit attesting to this. Nuwesra maintains that prior to filing the ADA action, he reviewed the file and contacted and interviewed at least three nonparty witnesses to ascertain whether they had knowledge of plaintiff's HIV status in 1992. Nuwesra also spoke with Forbes' priest, the Reverend Crafton, before accepting the case. Although Mr. Nuwesra cannot escape Rule 11 sanction because, under the circumstances discussed above, a reasonable attorney would have done more investigation at the initial stage and later on in the course of the litigation, there has been an insufficient showing of complete bad faith in bringing this action. *Forbes,* 179 F.R.D. 107, 111–12.

If plaintiff is contending that there was not the requisite total bad faith as required by this statute, then the court's decision not to sanction Nuwesra under it in the *Forbes* case can hardly demonstrate bias.

As a final matter, Mr. Curley asks the court to take into consideration his "heightened state of anxiety due to all the publicity surrounding the sanctioning of my lawyer." Aff. of James F. Curley, ¶ 9. Plaintiff's anxiety, though regrettable, does not give cause for recusal. The decision of the press to publish the *Forbes* decision clearly says nothing about the bias *vel non* of the judge.

## CONCLUSION

The court, having found that a reasonable person, knowing all the facts, could not conclude that the trial judge's impartiality could reasonably be questioned, denies plaintiff's 28 U.S.C. § 455 motion.