**Ilona GARTENBAUM, Plaintiff,**

v.

**BETH ISRAEL MEDICAL CENTER a/k/a Beth Israel Hospital, Shawn Seebrooks Manjiri Rao–Kostas, and Joyce Coles, Defendants.**

Nos. 96 CIV. 9252(CBM),
98 CIV. 2082(CBM).

United States District Court,
S.D. New York.

Nov. 6, 1998.

Bart L. Nason, New York City, for plaintiff.

Rory J. McEvoy, Marshall & McEvoy, New York City, for defendants.

### MEMORANDUM OPINION

MOTLEY, District Judge.

## I. BACKGROUND

Plaintiff, Ilona Gartenbaum ("Gartenbaum"), commenced this action on December 9, 1996 against defendants, Beth Israel Medical Center ("Beth Israel" or "the Hospital"), Shawn Seebrooks ("Seebrooks"), Manjiri Rao–Kostas ("Rao–Kostas"), and Joyce Coles ("Coles"). Gartenbaum, who is white, alleges that defendants violated Title VII of the Civil Rights Act of 1964 by promoting black employees for various positions instead of white employees, even though the white employees were allegedly more qualified and had more seniority than the black employees.

Gartenbaum worked for Beth Israel from 1979 to 1996. In October 1993, Gartenbaum was working part-time in the Electrocardiogram ("EKG") Department of Beth Israel as a Pre–Operative ("Pre–Op") Technician. Plaintiff alleges that during her time at Beth Israel, she applied for several open positions that were ultimately filled with African–American candidates. Plaintiff asserts that, in most cases, she was the most senior and most qualified applicant but was illegally denied these promotional opportunities on the basis of her race. The individual named defendants are non-white supervisors who were allegedly responsible for hiring and promoting employees within plaintiff's department.

During a pre-trial conference on July 9, 1998, the court, *sua sponte*, inquired as to whether plaintiff's counsel, Bart Nason, had conducted an adequate pre-filing investigation regarding the merits of the plaintiff's Title VII claim in this case as required by Rule 11 of the Federal Rules of Civil Procedure. Defense counsel had brought to the court's attention the fact that plaintiff had invoked her union's grievance procedure with respect to her failure to be promoted to various positions over the years. The union's grievance hearings personnel, and later an arbitrator from the American Arbitration Association, concluded that plaintiff had not been improperly denied promotions because she filed past grievances. (Exh. A to Fardan Affidavit, p. 7). During those proceedings, plaintiff never alleged that she had been denied a particular promotion because of her race.

At a hearing on September 9, 1998, regarding possible Rule 11 sanctions, Mr. Nason was given an opportunity to explain what investigation he conducted prior to filing the complaint that supported Gartenbaum's racial discrimination claim in the instant action.

## II. DISCUSSION

### A. Rule 11 Standard

Rule 11 of the Federal Rules of Civil Procedure has imposed a responsibility on attorneys to conduct a reasonable investigation of the facts before filing papers with the court. Rule 11(b) provides, in pertinent part, as follows:

"By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation

.    .    .    .    .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . "

*Fed.R.Civ.P.11(b).*

The Rule 11 standard is an objective one. The district court has the task of objectively determining whether the attorney facing sanctions had a reasonable evidentiary basis for the claim when the pleading was signed. *See, Paganucci v. New York,* 993 F.2d 310 (2d Cir.1993); *see also, Johnson v. Tower Air,* 149 F.R.D. 461, 472 (E.D.N.Y. 1993). Although an attorney may rely on

"the objectively reasonable representations of the client ... [he] cannot totally rely on the uncorroborated word of h[is] client and hearsay witnesses for all of the key contentions of the case" *Forbes v. Merrill Lynch, Fenner & Smith,* 179 F.R.D. 107, 109 (S.D.N.Y.1998). "When an attorney must rely on his client, he should question him thoroughly, not accepting his version on faith alone ... if all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his [Rule 11] obligation" *Id.* (quoting *Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.,* 114 F.R.D. 684, 689 (S.D.N.Y.1987)).

## B. Title VII Standard

In Title VII cases, the courts employ a burden shifting approach as outlined in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 505–12, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) and more recently in *Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir.1997) (*en banc*). The Second Circuit in *Fisher* laid out its interpretation of the prima facie case requirement and its effect on plaintiff's burden of proof in Title VII cases. Plaintiff has the initial burden of proving a prima facie case, which consists of the following: (1) plaintiff is a member of a protected class; (2) plaintiff is qualified for the position that she applied for; (3) plaintiff was denied the position or promotion; and (4) plaintiff was denied the promotion under circumstances giving rise to an inference of discrimination. After the prima facie case has been established, the defendant must articulate a legitimate, non-discriminatory reason for its adverse employment action. *Fisher,* 114 F.3d at 1337 (Jacobs, J., plurality opinion); *St. Mary's,* 509 U.S. at 507, 113 S.Ct. 2742. The burden of proof then shifts back to the plaintiff to show: (1) that the proffered reason given by the defendant is pretextual, and (2) that racial discrimination was a motivating factor in the employment decision. *Fisher,* 114 F.3d at 1339 (Jacobs, J., plurality opinion).

In Title VII disparate treatment cases, the proof of a prima facie case is minimal. *See,*

*Fisher,* 114 F.3d at 1335 (Jacobs, J., plurality opinion).

"[T]he essential elements of th[e] diminished, minimal prima facie case do not necessarily support a reasonable inference of illegal discrimination. In our diverse workplace, virtually any decision in which one employment applicant is chosen from a pool of qualified candidates will support a slew of prima facie cases of discrimination.... The fact that a plaintiff is judged to have satisfied these minimal requirements is no indication that, at the end of the case, plaintiff will have enough evidence of discrimination to support a verdict in his favor" *Fisher,* 114 F.3d at 1337 (Jacobs, J., plurality opinion).

In short, setting forth a prima facie case is necessary, but not always sufficient, to prove racial discrimination. *See, Id.*

Lawyers seeking to bring Title VII claims to federal court need to be mindful that these cases require "reasonable inquiry" into the validity of the claim, other than the bare assertions of their clients. Although intent in Title VII cases is often an inference to be drawn from proved facts as in any other case involving a defendant's state of mind, there must be some underlying factual support from which the intent to discriminate may be inferred. Here, plaintiff's counsel certified to the court, through the filing of the complaint, that his client had a viable Title VII claim of racial discrimination. Yet, it is not clear that Mr. Nason conducted an adequate investigation of this Title VII claim prior to filing suit.

## C. Mr. Nason's Pre–Filing Investigation of Gartenbaum's Title VII Claim

Mr. Nason, at the July 9, 1998 pre-trial conference in this case, failed to show that he conducted a reasonable investigation of his client's claim prior to filing it in this court. He failed to present any evidence that supported, either directly or by reasonable inference, his client's claim of racial discrimination. Simply put, plaintiff's claim seemed to rest on the fact that non-white employees had been awarded promotions to which she felt entitled, notwithstanding the fact that her union's grievance machinery had found

that she had not been improperly denied any promotion because she had filed many complaints and notwithstanding the fact that plaintiff did not claim race discrimination at the union's hearings. Thus, absent some proof of racial discrimination or circumstances from which race discrimination may be reasonably inferred, plaintiff's claim seems to have little chance of surviving.

During the hearing on possible Rule 11 sanctions on September 9, 1998, Mr. Nason detailed four promotional opportunities that he claims his client was illegally denied on the basis of her race. (Tr. at 3–11).[1] Mr. Nason alleged that three of the four positions were awarded to non-white employees who were less qualified or who had less seniority than plaintiff; the fourth position remained unfilled. Mr. Nason further represented to the court that his pre-filing investigation consisted of talking with his client, reviewing documentation submitted by his client and the defendants to the Equal Employment Opportunity Commission ("EEOC") during its investigation, and conversations with Danny Fardan, an African–American Union delegate who, according to Mr. Nason, supported Gartenbaum's claim of racial discrimination. (Tr. at 3,6,8,28–30, & 36). The EEOC had found no evidence to support Gartenbaum's claim of racial discrimination but did issue plaintiff a right to sue letter. (Tr. at 3).

Prior to filing this Title VII claim, Gartenbaum had also filed for arbitration under the union contract in March 1995, claiming that she was unfairly denied the promotion to Lead Technician in October 1993 because she had filed multiple past grievances against the Hospital. In addition, she filed a separate unfair labor practice charge with the National Labor Relations Board ("NLRB") disputing the same promotion. However, Gartenbaum never raised the issue of race during either of those proceedings, despite the existence of an anti-discrimination clause in plaintiff's collective bargaining agreement. (Tr. at 16 & 20).

Mr. Nason conceded that to the best of his knowledge, Gartenbaum has never raised the issue of race in any past grievance or proceeding involving the Hospital. (Tr. at 35).

On November 20, 1996, Arbitrator Adelman found no tangible evidence that Gartenbaum was denied any promotional opportunities because she was "Ms. Gartenbaum" or because she filed past grievances. (Exh. A to Fardan Affidavit, pp. 7 & 9). The NLRB later dismissed plaintiff's unfair labor practice claim, adopting Arbitrator Adelman's findings. (Tr. at 19–20). On September 4, 1996, the EEOC found no evidence of racial discrimination in Gartenbaum's case. (Tr. at 3). Mr. Nason conceded that he was aware of the arbitrator's decision prior to filing suit. (Tr. at 25). Given these prior agency decisions involving the same underlying facts and circumstances, Mr. Nason should have proceeded with caution when investigating the validity of his client's new race discrimination claim, particularly since Gartenbaum had not raised the issue of race in any prior grievance proceeding or arbitration.

■ However, at the hearing on possible Rule 11 sanctions on September 9, 1998, Mr. Nason did demonstrate that plaintiff could make out a prima facie case under Title VII by alleging that plaintiff was qualified for the promotions for which she applied but was passed over for someone of another race in at least two circumstances. (Tr. at 6–7). The Hospital did not contest Gartenbaum's qualifications regarding the promotions in dispute; although both parties conceded that plaintiff was the less senior employee regarding one promotion. (Tr. at 5 & 11). Mr. Nason claimed that his client was more qualified than those who were awarded the promotions for which plaintiff had applied. (Tr. at 8,11,-31, & 36). It is also uncontested that some of the persons responsible for promotions were non-white. (Tr. at 24). Both of these factors raise a rebuttable presumption of discrimination that is permissible at the prima facie stage.

When the court pressed counsel on the issue of race discrimination, Mr. Nason represented to the court that he had several conversations with Danny Fardan, an African American union representative who could corroborate plaintiff's claim of racial discrimination. (Tr. at 35–38). At the hearing on

1. Tr. refers to the transcript of the Rule 11 hearing held on September 9, 1998.

September 9, 1998, this court directed Mr. Nason to produce an affidavit of Mr. Fardan by September 21, 1998. The affidavit has been produced. After reviewing Mr. Fardan's affidavit and finding no reference to any incident or proof of racial discrimination against plaintiff or Caucasians, this court finds preliminarily, that Mr. Nason has failed to demonstrate that he made an adequate and reasonable investigation of his client's claim of racial discrimination before filing suit.

Mr. Fardan's affidavit addresses issues regarding compliance with the collective bargaining agreement provisions that govern the relationship between union employees and the Hospital. He focuses on the denial of plaintiff's promotional opportunities in terms of seniority, qualifications, union vs. non-union status, and full vs. part time workers. (Fardan Affidavit, pp. 1–3). Nowhere in his affidavit does Mr. Fardan mention race or any incident of discriminatory treatment of plaintiff on account of her race. Therefore, this court finds that Mr. Fardan does not lend support to plaintiff's Title VII claim.

However, since there has been no discovery since the filing of the complaint, the case cannot be dismissed without such discovery and a motion for summary judgment. Rule 11 sanctions will not be imposed at this juncture, however. The court will revisit the issue after a hearing and decision on the motion for summary judgment, if one is to be made by defendants.

## III.  CONCLUSION

The court finds that the complaint states a claim under Title VII of race discrimination and that plaintiff may be able to make out a prima facie case based on the fact that she was passed over in at least two cases for promotion and a person of another race was promoted. In addition, there was evidence presented that promotional decisions were being made by minority supervisors and there was no dispute over plaintiff's qualifications as to at least two positions. A separate pre-trial discovery order will be entered simultaneously herewith.

## IV.  RECENTLY  FILED  RELATED  CASE

On March 25, 1998, plaintiff filed a separate pro se lawsuit against Beth Israel and Joyce Coles, alleging that the defendants retaliated against her by terminating her employment on or about April 15, 1996 for failure to take an assessment test and abandonment of job. Plaintiff contends that the real reason for her termination was in retaliation for plaintiff's filing of complaints with the EEOC and other government agencies, including the above referenced Title VII case in this court, claiming discrimination on the basis of her race. Plaintiff asserts that assessment testing is not a part of the collective bargaining agreement governing her employment at the Hospital and that no other worker was fired for not taking an assessment test.

The court finds that these two suits are sufficiently related and therefore will be consolidated under one action.

SO ORDERED.