Lee NUWESRA, Esq., Appellant,

Ernesto Forbes, Plaintiff,

v.

MERRILL LYNCH, FENNER & SMITH, INC., Yolanda D'Apuzzo and Anthony Dibiase, Defendants–Appellees.

No. 98–7649.
Docket No. 98–7649.

United States Court of Appeals,
Second Circuit.

Argued March 4, 1999.

Decided April 22, 1999.

Lee Nuwesra, New York, NY, pro se.

Nicholas H. De Baun, Brown & Wood LLP, New York, NY (Roger J. Hawke, of counsel, on the brief), for defendants-appellees.

Davis & Eisenberg, New York, NY (Herbert Eisenberg and Paula A. Brantner, of counsel, on the brief), for amicus curiae National Employment Lawyers Association.

Before: JACOBS and SOTOMAYOR, Circuit Judges, and SAND,* District Judge.

PER CURIAM:

Attorney Lee Nuwesra ("appellant") appeals from an order of the United States District Court for the Southern District of New York (Motley, *J.*) sanctioning him under Fed.R.Civ.P. 11(c)(1)(B). Appellant represented plaintiff Ernesto Forbes ("plaintiff") in his unsuccessful lawsuit alleging that defendants Merrill Lynch, Fenner & Smith, Inc. ("Merrill Lynch"), Yolanda D'Apuzzo ("D'Apuzzo") and Anthony DiBiase ("DiBiase") (collectively, "defendants") fired him on account of his HIV status in violation of federal and state law. Following a bench trial, the district court dismissed all of plaintiff's claims and ordered appellant to pay attorneys' fees of $25,000 to defendants pursuant to Fed. R.Civ.P. 11(c)(1)(B). We hold that the district court improperly imposed sanctions without giving appellant adequate notice and a reasonable opportunity to respond, and had no authority under Rule 11(c)(1)(B) to award attorneys' fees *sua sponte*. We therefore vacate the district court's sanctions order and remand for further proceedings.

---

* The Honorable Leonard B. Sand, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

## BACKGROUND

### A. *Plaintiff's Termination*

Plaintiff alleged that in late summer or early fall of 1992, while he was working as a processing clerk in Merrill Lynch's messenger service center, he learned through an anonymous test that he was infected with the Human Immunodeficiency Virus ("HIV"). Plaintiff claimed that in October 1992, he informed his immediate supervisor, D'Apuzzo, of his medical condition, and as a result, "her attitude toward [him] soured and [his] work environment gradually became intolerable." In particular, D'Apuzzo allegedly reassigned many of plaintiff's duties to other employees, excluded plaintiff from meetings in or entry to her office, sprayed disinfectant in her office and on telephones used by plaintiff, asked the cleaning staff to use disinfectant when cleaning plaintiff's work area, made derogatory statements about gay people and people with AIDS in plaintiff's presence, commented to plaintiff that he looked thin, "repeatedly screamed at [plaintiff] in front of vendors and other employees and instigated fights and arguments," falsely accused plaintiff of improperly borrowing money from a vendor, and asked plaintiff's co-workers whether plaintiff was gay and whether he had made sexual advances toward them.

In January 1993, plaintiff claimed he informed D'Apuzzo's supervisor, DiBiase, that he was having difficulty working with D'Apuzzo. DiBiase allegedly acknowledged that he was aware of plaintiff's medical status and promised to intervene, but never did. On April 20, 1993, D'Apuzzo issued a ninety-day probation notice indicating that plaintiff was "unable or unwilling to work" with her. Plaintiff maintained that he later spoke to Merrill Lynch's Director of Human Resources, Nick DiGirolamo, about "the intolerable conditions he was enduring at his job" and requested a transfer to another department. On September 13, 1993, DiBiase instead called plaintiff into his office and told him he was fired for "insubordination."

### B. *Administrative Proceedings*

In February 1994, plaintiff filed dual complaints with the New York City Commission on Human Rights ("NYCCHR") and the Equal Employment Opportunity Commission ("EEOC") alleging that defendants had discriminated against him by denying him equal terms and conditions of employment and by terminating his employment on the basis of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and § 8–107.1(a) of the Administrative Code of the City of New York. In July 1994, plaintiff approached the Gay Men's Health Crisis ("GMHC") seeking legal representation. The GMHC was of the view that plaintiff "presented a credible claim of HIV discrimination" and agreed to represent him in the administrative proceedings.

On February 23, 1995, the NYCCHR issued a "Determination and Order After Investigation" dismissing plaintiff's complaint on the ground that "there [was] no probable cause to believe that respondents ha[d] engaged in the unlawful discriminatory practice complained of." Specifically, the NYCCHR found that

> [t]he investigation did not support complainant's allegations. The investigation revealed that complainant committed several acts of misconduct and performed his job responsibilities poorly. It was because of his performance problems that complainant was disciplined and eventually terminated....

Plaintiff timely sought review of this determination, and on June 29, 1995, the NYCCHR reaffirmed its original decision dismissing plaintiff's complaint.

### C. *District Court Proceedings*

In July 1995, the GMHC arranged for the law firm of Brenner, Chambers, Gant & Getachew to serve as *pro bono* counsel for plaintiff. The Brenner firm requested a right to sue letter from the EEOC, but

dissolved before filing a federal suit. In July 1996, the GMHC referred plaintiff's case to appellant, who agreed to represent plaintiff on a contingency fee basis. Appellant subsequently filed a complaint on plaintiff's behalf in federal district court alleging that defendants had violated the ADA and state law by terminating plaintiff's employment on the basis of his disability. After the parties conducted discovery, the district court held a three-day bench trial in October 1997. At the close of plaintiff's evidence, which included his own testimony, the court found that "leaving aside completely the issue of credibility," plaintiff had established a prima facie case of discrimination. Defendants then attempted to establish a legitimate nondiscriminatory reason for firing plaintiff by presenting witnesses, including D'Apuzzo, DiBiase and DiGirolamo, who testified that plaintiff was fired for insubordination. These witnesses also testified that they were not aware of plaintiff's medical condition until after he filed his administrative complaints. In his summation, defense counsel argued that the first record of plaintiff's medical condition was an HIV test conducted in June 1993, two months after plaintiff had been placed on probation.

At the close of the bench trial, the court dismissed plaintiff's remaining claims,[1] finding that "[t]here ha[d] been a total failure of proof on the part of plaintiff as to his claimed disability or claimed perceived disability and defendants' knowledge of same." The court further stated:

> If there is going to be a claim for counsel fees by the prevailing party, the defendants, they must submit in the next thirty days an affidavit setting forth the time spent in terms of hours supported by records. As I understand it those can be computer records.

I think that counsel fees should be awarded in this case because it is the [c]ourt's view that there was no substance to this case to begin with, and the statute allows for the recovery of counsel fees.

We also have in this court a rule prohibiting the filing of a complaint where there is no real basis for the complaint. That appears to have been the case here. There has been no application for a Rule 11 sanction, but I think that the awarding of counsel fees can serve as a deter[r]ent to bringing this kind of claim, that is, a claim for which there is no real proof, and no investigation apparently made of the facts prior to filing this complaint.

Merrill Lynch subsequently submitted an affidavit of services detailing its legal fees and expenses incurred in connection with the lawsuit, which totaled $234,045.66. No motion or memorandum of law accompanied the affidavit. One week later, the court issued an order scheduling "a hearing on the award of attorney's fees" and inviting appellant to respond to Merrill Lynch's affidavit. The order further stated that "[t]he court will be awarding attorney's fees based on one or more of the following provisions: 42 U.S.C. § 12205; 28 U.S.C. § 1927; Rule 11(c)(1)(B) F.R.C.P.; and the inherent power of the district court to award attorney's fees." Appellant filed responsive papers, and Merrill Lynch filed a reply. The court held a sanctions hearing on January 23, 1998.

On April 6, 1998, the district court issued an order sanctioning appellant under Rule 11(c)(1)(B) and ordering him to pay attorneys' fees of $25,000 to defendants. The order stated that appellant

> is not being sanctioned merely or even primarily for the complaint he filed but rather for taking the case all the way to

---

1. The district court had previously dismissed plaintiff's state statutory claim on the ground that the NYCCHR's no probable cause determination collaterally estopped plaintiff from

pursuing that claim. *See Forbes v. Merrill Lynch, Fenner & Smith, Inc.*, 957 F.Supp. 450, 453–55 (S.D.N.Y.1997).

trial; he is being sanctioned for his *ongoing* failure to make reasonable inquiries in the papers he filed before the court, from the complaint onward. His pre-trial memorandum, submitted after the close of discovery, reiterated many of the problematic assertions in the case and contained some important omissions.

*Forbes v. Merrill Lynch, Fenner & Smith, Inc.*, 179 F.R.D. 107, 111 n. 6 (S.D.N.Y. 1998). The court specifically declined to sanction a colleague of appellant's who signed the complaint, argued in opposition to defendants' motion to dismiss and responded to discovery requests, but did not represent plaintiff at trial. *See id.* The court also declined to award attorneys' fees under either 28 U.S.C. § 1927 or the court's inherent powers, based on its finding that "there has been an insufficient showing of complete bad faith in bringing this action." *Id.* at 112.

The district court cited four specific grounds for its sanctions award. First, the court faulted appellant for failing to ascertain the exact nature of his client's disability. *See id.* at 110. The court noted that plaintiff had asserted in the complaint and pretrial order that he was HIV-positive, but had testified at trial that he had AIDS. *Id.* The court was also troubled that appellant had suggested at trial that HIV and AIDS were equivalent. *See id.* Although the court observed that "there is some inconsistent parlance in how AIDS is defined," and that "the medical community and society at large did not immediately delineate HIV and AIDS," the court concluded that "it is clearly problematic for a lawyer bringing ADA cases to stand in a courtroom in 1997 and suggest that HIV and AIDS are in fact the same thing." *Id.* at 110 n. 4.

Second, the district court sanctioned appellant for failing to investigate precisely when plaintiff learned of his medical condition. In particular, the court noted the absence of any documentary evidence supporting plaintiff's allegation that he tested positive for HIV either in August 1992, as the complaint alleged, or in October 1992, as plaintiff testified at trial. *See id.* at 110. At the sanctions hearing, appellant had asserted that no documentary evidence of this test existed because plaintiff had been tested anonymously, could not recall the name or location of the testing service, and had received his test results by telephone. The court rejected this argument, noting that "[e]ither due to his own confusion or to deliberate obfuscation, [appellant] appeared to be conflating anonymous *testing*, a practice necessary to preserve a patient's privacy, with the existence of an entirely anonymous testing *service*." *Id.*

Third, the district court determined that appellant did not reasonably investigate whether, when and under what circumstances plaintiff informed his supervisors about his HIV or AIDS status, which the court characterized as "a crucial omission given that the employer's notice was the crux of the case." *Id.* The court was particularly troubled by certain inconsistencies in plaintiff's complaint, deposition testimony, pretrial submissions and trial testimony concerning when and to whom (D'Apuzzo, DiBiase or DiGirolamo) plaintiff revealed his medical condition. *See id.* at 111.

Finally, the district court concluded that the NYCCHR's no probable cause determination was an "extremely relevant circumstance," which, together with plaintiff's inability to produce evidence to support key aspects of his claim, "should have caused [appellant] to proceed with extra caution, or, better yet, not to proceed at all." *Id.*

This appeal followed.

## DISCUSSION

■ We review all aspects of a district court's Rule 11 determination for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*, 73

F.3d 1253, 1257 (2d Cir.1996). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter*, 496 U.S. at 405, 110 S.Ct. 2447. Appellant contends that the district court abused its discretion by, among other things, failing to give him adequate notice and a reasonable opportunity to respond before imposing sanctions, and awarding attorneys' fees to defendants *sua sponte* under Rule 11(c)(1)(B). We address these contentions in turn.

### A. Notice and Opportunity to Be Heard

■ "[D]ue process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir.) (quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996)) (alteration in original), *cert. denied*, —— U.S. ——, 118 S.Ct. 337, 139 L.Ed.2d 262 (1997); *accord Rounseville v. Zahl*, 13 F.3d 625, 632–33 (2d Cir.1994). Rule 11 itself requires that sanctions be imposed only "after notice and a reasonable opportunity to respond." Fed. R.Civ.P. 11(c); *see also* Fed.R.Civ.P. 11(c) advisory committee's note to 1993 amendments ("Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed.").

■ In particular, "a sanctioned attorney must receive *specific notice of the conduct alleged to be sanctionable* and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter." *Lapidus*, 112 F.3d at 97 (emphasis added); *see also United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1346 (2d Cir.1991) (district court must "specify the sanctionable con-

duct and the authority for the sanction"). "The purpose of particularized notice is to put counsel 'on notice as to the particular factors that he must address if he is to avoid sanctions.'" *Lapidus*, 112 F.3d at 96 (quoting *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir.1990)). Accordingly, Rule 11 requires that the court, before imposing sanctions *sua sponte*, "enter an order describing the *specific conduct* that appears to violate [the rule] and directing [the] attorney ... to show cause why it has not violated [the rule] with respect thereto." Fed.R.Civ.P. 11(c)(1)(B) (emphasis added).

■ The district court's orders in this case failed to apprise appellant of the specific conduct alleged to be sanctionable. The court's written order stated only that "[t]he court will be awarding attorney's fees based on one or more of the following provisions: 42 U.S.C. § 12205; 28 U.S.C. § 1927; Rule 11(c)(1)(B) F.R.C.P.; and the inherent power of the district court to award attorney's fees." Although this order notified appellant of the possible legal bases for a fee award, it failed to apprise him of the particular conduct for which the court was considering imposing sanctions.

The district judge's statements from the bench at the end of the trial were similarly deficient.[2] Those statements referred only to conduct leading up to and including the filing of the complaint:

> We also have in this court a rule prohibiting *the filing of a complaint where there is no real basis for the complaint. That appears to have been the case here.* There has been no application for a Rule 11 sanction, but I think that the awarding of counsel fees can serve as a deter[r]ent to bringing this kind of claim, that is, *a claim for which there is no*

---

2. We assume, without deciding, that a judge's statements on the record could satisfy the requirements of Fed.R.Civ.P. 11(c)(1)(B) in the absence of a written order to show cause. *But cf.* Fed.R.Civ.P. 11(c)(1)(B) ("On its own initiative, the court may *enter an order* de-

scribing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.") (emphasis added).

*real proof, and no investigation apparently made of the facts prior to filing this complaint.*

(Emphasis added.) As noted, however, the court sanctioned appellant "not ... merely or even primarily for the complaint he filed but rather for taking the case all the way to trial," *i.e.,* "for his *ongoing* failure to make reasonable inquiries in the papers he filed before the court, *from the complaint onward." Forbes,* 179 F.R.D. at 111 n. 6 (second emphasis added). The judge's statements at the end of the trial therefore failed to identify the specific conduct for which appellant was ultimately sanctioned, and thus failed to "put [appellant] on notice as to the particular factors that he [needed to] address ... to avoid sanctions." *See Lapidus,* 112 F.3d at 96 (internal quotation marks omitted); *Hodges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1331 (2d Cir.1995) (reversing Rule 11 sanction based on attorney's nondisclosure of state court proceedings in part because district court's "opinion ... that listed the possible bases for imposition of sanctions omitted any reference to [attorney's] non-

disclosure of the state court action"); *cf. Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 109 (2d Cir.1998) ("Absent a statement from the district court explicitly informing [attorney] that it was considering sanctions against him for making false representations on October 5, 1998 to that court, [the attorney] was entitled to assume that the court was considering sanctions [under 28 U.S.C. § 1927 and the court's inherent powers] only for the entirely separate act of filing the ... action in bad faith.").

██ The district court also failed to give appellant "a reasonable opportunity to respond" before imposing sanctions. *See* Fed.R.Civ.P. 11(c). During the sanctions hearing, the court questioned appellant concerning the nature and extent of his pre-filing investigation[3] and his knowledge of the NYCCHR's no probable cause determination.[4] The court did not, however, address other specific instances of conduct for which it later sanctioned appellant. For example, the court did not address appellant's putative failure to ascertain whether plaintiff had HIV or AIDS[5] or his

3. Appellant informed the court that before filing the complaint, he met with plaintiff on at least three occasions, reviewed plaintiff's "extensive file," consulted plaintiff's former attorney at the GMHC (who had investigated plaintiff's claims and found them to be credible), and interviewed at least three non-party witnesses (including two ministers) to whom plaintiff had revealed his HIV status as of late 1992.

4. We have noted that "employment-agency determinations 'are not homogeneous products; they vary greatly in quality and factual detail.'" *Paolitto v. John Brown E. & C., Inc.,* 151 F.3d 60, 65 (2d Cir.1998) (quoting *Johnson v. Yellow Freight Sys., Inc.,* 734 F.2d 1304, 1309 (8th Cir.1984)). In this case, for example, the NYCCHR made only conclusory findings and described neither the nature nor the extent of its investigation of plaintiff's claims. It appears, moreover, that the NYCCHR failed to interview plaintiff's witnesses, including one witness whom the district court considered "certainly ... relevant," *see* 957 F.Supp. at 455, and refused to convene a fact-finding conference where plaintiff's counsel could have cross-examined defendants' witnesses. Plaintiff has not ap-

pealed the district court's ruling that he received a full and fair hearing before the NYCCHR and thus was collaterally estopped from litigating his state statutory claim. *See id.* at 453–55. Even if that ruling was correct, however, it does not establish that appellant acted unreasonably in not deferring to an administrative no probable cause determination based on an incomplete investigation. We have seen many employment discrimination cases in which plaintiffs established liability at trial after an agency finding of no probable cause. *See, e.g., Paolitto,* 151 F.3d at 62 (jury verdict in favor of ADEA plaintiff on all claims after state agency determined that plaintiff's evidence of age discrimination was insufficient).

5. The record reveals that appellant proffered expert medical testimony at trial to explain the relationship between HIV and AIDS. According to appellant's proffer, this testimony would have demonstrated that plaintiff qualified as having AIDS based on his June 1993 HIV test. Appellant argued to the district court, moreover, that proof of actual disability was not required in a case alleging discrimination based on a *perceived* disability.

failure to investigate defendants' knowledge of plaintiff's disability.[6] Because these alleged failures "w[ere] not explicitly raised during the hearing," appellant "was not sufficiently put on notice that this was his opportunity to defend himself against th[ese] charge[s]." *See Lapidus,* 112 F.3d at 97. In our view, appellant was thus entitled to "a more focused hearing before sanctions were imposed." *See id.*

### B. Attorneys' Fees under Rule 11

■ Under Rule 11(c), a court may impose sanctions either by motion, *see* Rule 11(c)(1)(A), or on its own initiative, *see* Rule 11(c)(1)(B). Rule 11(c), however, also limits the types of sanctions that may be imposed for violation of the rule as follows:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.... [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, *if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees* and other expenses incurred as a direct result of the violation.

Fed.R.Civ.P. 11(c)(2) (emphasis added). As the italicized language indicates, a court may award attorneys' fees under Rule 11 only "if imposed on motion" under Rule 11(c)(1)(A). *See Thornton v. General Motors Corp.,* 136 F.3d 450, 455 (5th Cir. 1998) (per curiam). By its terms, the rule thus precludes a court from awarding attorneys' fees on its own initiative. *See* Fed.R.Civ.P. 11 advisory committee's note to 1993 amendments ("The revision [to subsection (c) ] provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court."); *see also Thornton,* 136 F.3d at 455 ("[W]here sanctions are imposed under Rule 11(c)(1)(B) by a district court on its own initiative, ... the award of attorney's fees ... [does not] constitute a valid sanction."); *Johnson v. Waddell & Reed, Inc.,* 74 F.3d 147, 152 n. 3 (7th Cir.1995) (per curiam) ("[W]here sanctions are imposed under Rule 11(c)(1)(B) by the district judge on his own initiative, Rule 11(c)(2) provides that payment of sanctions may be directed only to the court as a penalty.").

■ Defendants did not move for sanctions in this case. The court, not defendants, raised the issue of sanctions at the end of the trial and later issued a written order setting forth the grounds it was considering for the imposition of sanctions. Defendants ask this Court to treat Merrill Lynch's affidavit of services and reply affidavit as a motion for sanctions under Rule 11(c)(1)(A). A motion for sanctions, however, must "be made separately from other motions or requests" and must "describe the specific conduct alleged to violate [the rule]." Fed.R.Civ.P. 11(c)(1)(A). Merrill Lynch's affidavit of services did neither. In fact, Merrill Lynch conceded in its reply affidavit submitted to the district court that "[t]his [c]ourt indicated in its order dated November 5, 1997, that Rule 11 sanctions might be awarded under Rule

---

*See* Trial Tr. at 146 ("I don't believe, your Honor, that when you go after the theory that they perceived you [as disabled] that you have to prove that in fact you are disabled."). The district court apparently agreed with appellant on this point. The court explicitly recognized in its sanctions opinion that "the differences between [HIV and AIDS] were not relevant for purposes of this case because the question of defendants' knowledge and consequent alleged discrimination due to the disability became paramount." *Forbes,* 179 F.R.D. at 110.

**6.** The record reveals that from the complaint onward, plaintiff consistently averred that he told D'Apuzzo, his immediate supervisor, about his HIV/AIDS status before the allegedly discriminatory treatment began. In addition, the pretrial order and pretrial memorandum both asserted that DiBiase, the supervisor who ultimately fired plaintiff, acknowledged that he was aware of plaintiff's medical status prior to his discharge.

11(c)(2)(B) on the court's own initiative. *A prior motion by Merrill Lynch is not required.*" (Emphasis added.) In light of this concession, we decline to treat Merrill Lynch's affidavit of services and reply affidavit as a motion for sanctions under Rule 11(c)(1)(A).

We conclude that the district court sanctioned appellant on its own initiative rather than by motion. Because Rule 11(c)(2) permits a court to award attorneys' fees only by motion, the district court had no authority to do so *sua sponte.* We also have concerns about the evidentiary basis for the court's sanctions order based on the fuller record that appellant has developed on appeal. *See* footnotes 3–6, *supra.* We trust, however, that the experienced district court judge will, on remand, consider this fuller record in deciding whether to reinitiate sanctions proceedings under Rule 11(c)(1)(B).

## CONCLUSION

We hold that the district court improperly sanctioned appellant without giving him adequate notice and a reasonable opportunity to respond, and had no authority under Rule 11(c)(1)(B) to award attorneys' fees to defendants *sua sponte.* For the reasons discussed, we vacate the district court's sanctions order and remand for further proceedings in the district court's discretion.